### DOWNS v. GEORGIA CASUALTY CO.

(District Court, D. New Jersey. March 14, 1921.)

1. **Insurance ☞435—Policy required by statute from auto bus owner limited to car described.**

   Under Act N. J. March 17, 1916 (P. L. 283), providing that no auto bus shall be operated in the streets of a city until the owner shall obtain a license therefor from the city authorities, which shall be issued only on the filing by such owner of an insurance policy covering legal liability for any injury or death caused by the use of such auto bus both the license and the insurance policy are limited to the particular car named therein and the insurer cannot be held liable for an injury caused by a different car operated by the same owner.

2. **Insurance ☞175—Antedating transfer of policy to different subject held not to create liability for previous loss.**

   The indorsement, by an agent on a policy insuring against liability on account of injuries caused by an automobile, of its transfer to a different

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

car, and the dating of the transfer back to a prior date, at request of the owner, *held* not to impose liability on the insurer for an injury caused by such substituted car previous to the actual transfer and not then known to either the company or its agent.

At Law. Action by Edward Downs against the Georgia Casualty Company. Trial to court. Judgment for defendant.

James Mercer Davis, of Camden, N. J., for plaintiff.

Edward L. Katzenbach, of Trenton, N. J., for defendant.

RELLSTAB, District Judge. Edward Downs, having recovered a judgment in the New Jersey courts against Henry Levin, the owner of a Packard automobile, for bodily injuries inflicted upon him on December 1, 1917, by that automobile while operated by Levin, brought this suit against the defendant, Georgia Casualty Company, to recover the amount of the judgment and costs.

[1] His suit here is based on a policy of insurance issued by the defendant to Levin, pursuant to the provisions of the act of the New Jersey Legislature entitled "An act concerning auto busses, commonly called jitneys, and their operation in cities," approved March 17, 1916 (P. L. N. J. 283). Section 1 of this act defines an auto bus as including—

"any automobile or motor bus, commonly called jitney, engaged in the business of carrying passengers for hire."

Section 2 provides that no such auto bus—

"shall be operated wholly or partly along any street in any city until the owner or owners thereof shall obtain the consent of the board or body having control of public streets in such city for the operation of such auto bus and the use of any street or streets of said city; and no such consent shall become effective and no such operation shall be permitted until the owner of such auto bus * * * shall have filed with the chief fiscal officer of the city in which said auto bus shall be licensed and operated an insurance policy * * * in the sum of five thousand dollars ($5,000) against loss from the liability imposed by law upon the auto bus owner for damages on account of bodily injury or death suffered by any person or persons as a result of an accident occurring by reason of the ownership, maintenance or use of such auto bus upon the public streets of such city, and such consent shall continue effective and such operation be permitted only so long as such insurance shall remain in force; such insurance policy shall provide for the payment of any final judgment recovered by any person on account of the ownership, maintenance and use of such auto bus or any fault in respect thereto and shall be for the benefit of every person suffering loss, damage or injury as aforesaid."

Section 4 provides:

"Nothing herein contained shall exempt any person owning or operating any auto bus from complying with existing statutes relating to the ownership, registration and operation of automobiles in this state."

And section 5 provides:

"Any person operating an auto bus in any of the streets of any city in this state at any time, after sixty days from the time when this act shall take effect, without complying with the provisions of this act, shall be deemed guilty of a misdemeanor and subject to the penalties therefor provided by law."

At the time of the issuance of the policy in question—i. e., October 16, 1917—Levin was the owner of a Ford touring car, and the policy referred to such car by name, number, and year of manufacture. It was filed with the chief fiscal officer of the city of Trenton on October 17, 1917, and the certificate of the officer shows that the consent was limited to the car named in such policy. The policy (unaltered) was in force on the date of the accident.

The plaintiff's first contention is that under the act the insurer's liability is not limited to the particular car mentioned in the policy, but extends to any car that the person named in the municipal consent may operate while the policy is in force. The title of the act is general, but the word "operation," found therein, validly comprehends so much of the enactment as requires the filing with the municipal authorities of an accident insurance policy for the protection of the traveling public, as a condition precedent to licensing an auto bus to use the streets of a given city. Gillard v. Manufacturers' Insurance Co. of Philadelphia, 93 N. J. Law, 215, 107 Atl. 446. The licensing of an automobile, or a person to run or operate it, is not authorized by this act; the power to grant such a license is made the subject of another statute and is delegated, not to a municipal body, but to a state officer.

The municipal consent authorized by the auto bus act presupposes that both the car and the operator are licensed by state authority, and the whole purpose of such added consent spends itself on the car to be operated. As the consent is limited to a particular car, it follows that only the car or cars named therein can be operated thereunder, and as the consent is conditioned upon the filing of a policy of insurance with the municipal officer issuing the consent, it further follows that the obligation of the insurer is limited to the car named in the policy, and, without its consent cannot be extended to cover another car. The penalty denounced by the act, for operating an auto bus without complying with its provisions, while applicable only to the operators of the cars, is for the purpose of preventing the operation of unlicensed cars. The indemnity secured by the insurance policies required by the act covers only losses sustained through the operation of a licensed auto bus.

[2] However, it is said that the defendant agreed that its policy should cover the Packard in place of the Ford car, or that it is estopped from denying liability. These contentions require the stating of the following additional facts: On December 5, 1917, the general agents of the defendant, on an application received by them on December 3, 1917, indorsed the policy so that it ceased to cover the Ford car and covered a Packard car, as of 12 o'clock noon, December 1, 1917; that neither the defendant nor such general agents knew of the accident on any of said dates; that in the litigation between Downs and Levin in the state courts, resulting in the judgment hereinbefore referred to, the defendant managed and controlled Levin's defense, under an agreement between them (to which, however, Downs was not a party); that the defendant "reserved the right to disclaim liability under the aforesaid policy of the said Henry Levin"; that after the conclusion of such

litigation, the defendant advised Levin "that it disclaimed any liability whatsoever under its policy of insurance, for the reason that, as it claimed, no insurance had ever been issued by it upon said Packard car, or was in effect at the time of the accident referred to." The policy contains no provision giving the right to the assured, on mere request, to substitute another car for the one named therein.

Little more than a recital of these facts is necessary to show the untenableness of these contentions. The record does not disclose whether the defendant's agents had authority to antedate the consent to a substitution of cars. However, it does show that at the time of indorsing the policy, neither they nor the defendant knew that the consent would cover an accident which had already occurred.

In such circumstances, there is an absence of that meeting of minds which is the vital principle in all enforceable contracts. Never having knowingly agreed to cover an accident which had already taken place when the consent to a substitution of cars was actually given, the defendant had the legal right to repudiate any liability based thereon.

The taking over by defendant of Levin's defense in Downs' suit against him was not in itself a ratification of such indorsement, and, as such undertaking was accompanied with the express right to disclaim liability under the policy, the defendant is not estopped from denying liability in the present suit.

The record discloses nothing done by the defendant, after it learned of the accident, which in any way prejudiced the plaintiff's rights as fixed at the time of his injury, or which accrued to him subsequently.

The defendant is entitled to, and may enter, a judgment of no cause of action.