ASH-GROVE LIME AND PORTLAND CEMENT CO., A CORPORATION, RESPONDENT, v. SOUTHERN SURETY CO., A CORPORATION, APPELLANT. —39 S. W. (2d) 431.

Kansas City Court of Appeals. Opinion filed May 25, 1931.

*C. A. Randolph* for respondent.

*Burns & White* for appellant.

ARNOLD, J.—This is an action to recover upon what is known as a "fleet" or "schedule" liability insurance policy.

Plaintiff is a corporation, duly organized under the law, having its principal offices at Kansas City, Missouri, and engaged in the manufacture and sale of lime, cement and other products, and in connection with the operation of its business, salesmen and other persons were employed and automobiles were owned and used in carrying on its business in the State of Missouri and elsewhere, including the States of Arkansas and Louisiana. Defendant also is a corporation, duly organized and existing under the law, and transacting a general casualty and surety business in the State of Missouri and other states, and is engaged in writing, among other forms of insurance, policies of liability insurance, protecting and indemnifying the owners of automobiles against liability for personal injuries and damage to property caused by the use, maintenance, ownership and operation of such automobiles.

On April 28, 1927, defendant issued a policy of insurance agreeing to indemnify plaintiff against loss by reason of liability imposed upon it by law for damages on account of bodily injuries accidentally sustained, including death resulting therefrom, subject to the exceptions, conditions and limitations stated therein. Attached thereto was a schedule of the automobiles operated by insured and covered by the policy. There was an indorsement on the policy providing for changes in the particular automobiles covered. The provisions applicable to this phase of the policy are as follows:

"II. To indemnify the assured against loss by reason of the liability imposed upon him by law for damages on account of injury to or the destruction of property except (a) any property of the assured; (b) any property in the custody of the assured, or any of his bailees, and/or property which is rented or leased by the assured; (c) any property carried in or on any automobile of the assured, which injury or destruction shall result solely and directly from an accident due to the ownership, maintenance or specified use of any of the automobiles enumerated and described in said declarations. This indemnity shall not apply unless a specific premium for damage to property is stated in item eight (8) of said declarations.

"VIII. This agreement shall apply to bodily injuries accidentally sustained and/or injury to or the destruction of property so sustained by reason of the ownership or maintenance of any of the automobiles enumerated and described in said declarations and the use of such automobiles for the purposes specified in Item 8 thereof. This agreement shall not apply in respect to any automobile (1) while driven or manipulated in any race or any competitive speed test, or (2) while rented to others or used for carrying passengers for a consideration, or (3) while being operated by any person under the age of sixteen years, or (4) while being used for any purpose other than specified in Item 8 of the declarations, or (5) while being used for towing or propelling a trailer therefor unless such privilege is endorsed hereon and a proper premium charged therefor. This agreement shall not apply to any public automobile garage, automobile repair shop, automobile sales agency, automobile service station and the agents or employees thereof.

"It is also understood and agreed that this policy is extended to cover automatically, from the date of their acquisition, any additional cars the assured may obtain by purchase or trade, provided the assured shall within thirty (30) days from the date of their acquisition make a report to the company of said cars and pay an additional premium on a *pro rata* basis."

The policy also contained the following, designated as provision D.

"Whenever the assured or bailees shall have knowledge or receive information of any occurrence which might result in a claim against the assured or bailees for damages on account of bodily injury sustained or for any other cause, and for which claim they might expect indemnity under this policy, then the assured or bailees shall give immediate written notice to the company or its duly authorized agent. The assured or bailees shall give like notice with full particulars of any such claim and if any suit or other proceeding is instituted against the assured or bailees on account of such claim, the assured or bailees shall immediately forward to the company or its duly authorized agent every notice, summons, or other process served upon the assured or bailees. No person claiming indemnity hereunder

shall voluntarily assume any liability either before or after an accident, settle any claim nor incur any expense other than for immediate surgical relief except at his own cost, nor interfere in any negotiation for settlement or legal proceeding without the consent of the company previously given in writing. Any person claiming indemnity hereunder, whenever requested by the company shall aid in securing information and evidence and the attendance of witnesses and in effecting settlements and in prosecuting appeals, and shall cooperate with the company in the defense of any claims or suits on account of which indemnity is expected under this policy. It is understood and agreed that between the company and the assured and/or any person claiming indemnity under this policy, that a literal and strict compliance with the requirements of this condition "D" is the essence of the contract and a condition precedent to recovery under this policy."

The petition is formal, alleging the execution of the policy, setting out the circumstances of an accident whereby a man was killed by an automobile owned by plaintiff and driven by one of its salesmen, and that

"On or about the 4th day of November, 1927, while said policy was in full force and effect and while one of the agents and servants of the plaintiff was operating a Willys-Knight automobile, owned by the plaintiff and in plaintiff's service, and covered by said policy of insurance, at or near the Town of Benton, Saline County, Arkansas, said automobile collided with one A. F. Boswell, inflicting such bodily injuries upon him that the said Boswell died as a direct result thereof on or about the 5th day of November, 1927."

The petition further alleges the accident was reported to defendant on November 5, 1927, with details and particulars; that defendant took charge of said claim on behalf of plaintiff, but that thereafter on about November 16, 1927, defendant denied liability under the policy as to said accident, death and claim, and that thereafter plaintiff handled and finally settled the case for $1,000, and $150 for expenses and attorney fees. It is alleged plaintiff "has done and performed all conditions required on its part to be performed according to the terms and provisions of said policy." The policy is attached to the petition as exhibit "A." Judgment is asked in the sum of $1500, $500 for vexatious refusal to pay and $800 for attorney's fee, making a total of $2450, for interest at six per cent per annum from November 22, 1927, and for costs.

Defendant's first answer was a general denial. But a few months before the trial an amended answer was filed, admitting execution and delivery of the policy and setting up certain provisions thereof relating to exceptions and claims for property damage and to accidents occurring while engaged in racing, carrying passengers for hire, operation by persons under age, etc. The answer also sets up sections of

the policy providing for automatic coverage for cars acquired by trade or purchase during the policy year, with provisions for making report thereof in thirty days, and paying an additional premium on a *pro rata* basis. The amended answer states no specific premium was paid to cover the Willys-Knight automobile and that the acquisition of such car was not reported to defendant within thirty days thereafter.

The reply to the amended answer pleaded with more particularity the acts of waiver it proposed to show under and by virtue of the "performance clause" referred to in the petition; states that, under the provisions of the policy, plaintiff was entitled to return of the unearned premium on the Dodge coupe, listed in the schedule attached to the policy, from date of sale of the same on June 11, 1927, if defendant did not intend to apply same on the Willys-Knight car for which the Dodge was traded on said date, since there was no further liability on the Dodge car after the exchange, and that the cancellation clause of the policy entitled plaintiff to a *pro rata* return of the premium; that defendant had retained such portion of the premium on the Dodge car. The reply further charges the insurance policy contained no provision for forfeiture in case insured failed to notify insurer of the exchange of automobiles within thirty days after such exchange; sets up other matter as constituting a waiver by insurer of failure to give such notice, and that insurer is estopped to assert a forfeiture by reason of its said acts, which were inconsistent with a claim of forfeiture and which acts misled insured to its prejudice. Judgment is prayed in the reply in accordance with the petition.

Upon the issues thus made the cause was tried to a jury, resulting in a judgment for plaintiff in the sum of $1500. Motion for new trial was overruled and defendant appeals.

There is no dispute as to the material facts in the case but there is dispute as to the application of the law to the facts and therein lies the basis of this suit. The facts of record are that at the time the policy in issue was written the Dodge coupe on the schedule above referred to, was being operated by C. A. Petty, a salesman for plaintiff, on his territory in the States of Louisiana and Arkansas. On June 11, 1927, the said Dodge coupe was traded for a Willys-Knight coupe, at Springfield, Mo. Plaintiff received a statement for this exchange and the difference in value in favor of the latter car was paid on June 14, 1927. but the statement did not give the motor number of the Willys-Knight car, and on June 17, plaintiff wrote Petty asking for the motor number so the exchange could be reported to defendant. Mr. Kittle, plaintiff's auditor, had charge of its insurance matters. When the motor number arrived some days later, by oversight it was filed away by some clerk without its coming to the attention of Mr. Kittle, and through this oversight, the exchange in automobiles was not reported to defendant.

On November 4, 1927, salesman Petty, while operating the Willys-Knight car and in the line of his duty near Benton, Arkansas, ran over one A. F. Boswell, inflicting such bodily injuries upon him that he died the following day, as a result thereof. Under these circumstances arose a question of liability for the said injury and death. On the morning of November 5, 1927, Petty notified plaintiff of the accident by telegraph, covering the fact of the injury and death of Boswell and saying there was a possibility of settling the matter for the cost of burial expenses. Auditor stated he took the telegram to defendant's office in Kansas City, Mo., and gave it to a Mr. Rogers, defendant's claim adjuster, and told him the car involved in the accident was a Willys-Knight coupe which the company had obtained in exchange for the Dodge coupe listed; that the exchange had been made three or four months previous, but, through an oversight, plaintiff had overlooked reporting the exchange to defendant at the time; that Mr. Rogers told Kittle the policy covered all of plaintiff's automobiles and that the oversight in reporting the exchange made no difference and stated defendant would take charge of the claim and handle the matter, notwithstanding the oversight; that Mr. Rogers further told Kittle he thought it would be a good settlement if they could get off for burial expenses, and that he (Rogers) would wire Petty how he should proceed to settle the claim and take proper release; that Rogers further directed Kittle to wire Petty to follow instructions defendant would give him by telegraph. Kittle, accordingly telegraphed Petty the insurance company would wire him and for him to follow their instructions. Rogers then sent Petty the following telegram:

"Kansas City, Mo., Nov. 5, 1927.
"C. A. Petty, Benton, Ark.

"Your wire date concern fatal injury Boswell. Satisfactory for you dispose of same as stated in your wire to Robinson (stop) Secure local attorney to prepare legal release (stop) Draw on Southern Surety Company, Des Moines, Iowa, for money to pay burial expense and attorney fee, advise by wire disposition you make.

"SOUTHERN SURETY COMPANY,
"By J. W. ROGERS."

The same day Petty sent the following telegram to Rogers:

"Benton, Ark., Nov. 5, 1927.
"J. W. Rogers, Southern Surety Company,
"Kansas City, Missouri.

"Telegram received. Impossible now to settle on First named basis (stop) Will complete detailed report.

"C. A. PETTY."

Following instructions of plaintiff to follow defendant's advice, Petty remained at Benton, Arkansas, on account of said accident, and at the expense of plaintiff for one week from November 5, 1927. Re-

ceiving no other or further communication either from plaintiff or defendant, he left the vicinity and resumed his duties. November 7 or 8, plaintiff received a detailed report of the accident on one of defendant's regular blanks, showing the automobile involved in the accident was the Willys-Knight coupe, and giving the motor number thereof. The report was delivered to defendant company on the date of its receipt by plaintiff. Accompanying the report was a petition and summons in a suit instituted against plaintiff by A. F. Boswell for $3,000, because of the accident.

Plaintiff heard nothing further from defendant about the matter until November 12, 1927, when Rogers called Kittle over the telephone and asked for the exact date on which the Willys-Knight coupe was obtained, saying he was making some sort of report to his company and the exact date was necessary. In that conversation, Kittle asked Rogers, "Will that make any difference; are you going to stand behind this?" And Rogers replied: "No, it will not make any difference, but I have to make a report." After this telephone conversation, Kittle confirmed it by letter to defendant, giving the exact date of the exchange of cars and their motor numbers, and offered to pay any difference in premiums there might be for the remainder of the policy period. Thereupon, on November 14, 1927, defendant issued an indorsement eliminating from the schedule the Dodge coupe and covering the Willys-Knight, making an additional premium charge of $1.

On November 17, 1927, plaintiff received a letter from Rogers on behalf of defendant, dated November 16, 1927, denying all liability under the policy for the accident and death and assigning as the sole reason for such denial that plaintiff had failed to notify defendant of the exchange of cars within thirty days after acquiring the Willys-Knight car, and stating: "You will therefore take such steps as you deem proper to protect your interests." The testimony shows defendant did not tender back the portion of the premium plaintiff had paid on the Dodge covering the period from June 11 to November 12, 1927. Such tender was not made until about April, 1929, a year and a half after the denial of liability and long after the filing of this suit. Following denial of liability by defendant plaintiff compromised and settled the Boswell claim for $1,000, and incurred additional expenses for attorney fees and expenses, and for the time it kept Petty at Benton, Arkansas, in the total amount of $500, as stated above.

We have set out the facts as shown by the record except that John W. Rogers, witness for defendant, denied the conversation between him and Kittle, as related by the latter on the witness stand. Witness stated he had no knowledge of the exchange of cars and did not talk to Kittle about it; that the telegram was delivered to him by one of the clerks in his office and he had wired Petty to make the settle-

ment he stated he could make in the telegram. With the exception just noted, there appears to be no material facts in dispute.

Twelve points are raised in defendant's motion for a new trial and these are presented and developed here under three heads. The first is that the court erred in overruling defendant's instruction in the nature of a demurrer at the close of all the evidence, and in support of this charge, it is stated, as a general proposition, that plaintiff's right to recover must be governed by the terms of the policy sued on. It may be conceded this observation states correctly a general rule of law and demands a construction of the terms of the policy as applied to the facts here presented.

It is urged there is no dispute that the exchange of cars was made on June 11, 1927, and that no report of the exchange was made within thirty days thereafter, as provided by the policy. From this situation defendant argues plaintiff had no coverage of any kind on the Willys-Knight car after July 11, 1927; the car was used and driven by plaintiff from the last named date until November 4, following, when the accident happened; that plaintiff claims the telegram reporting the accident was given to Mr. Rogers, defendant's claim attorney at Kansas City; that plaintiff then told Mr. Rogers of the exchange of automobiles and he said it would make no difference. It is pointed out that Mr. Rogers denied these conversations and says he knew nothing about the exchange until the 7th or 8th of November, 1927, and that he told them he would have to notify the home office of the company; that he did notify the home office and they instructed him by letter of date November 16, 1927, to deny liability. Thus we find a dispute as to the facts in regard to the conversation between Kittle and Rogers which, of course, raised a question of facts for the jury. Of course, in considering the demurrer, we must accept plaintiff's version of the conversation as true, and give plaintiff the benefit of all favorable inferences to be drawn from all the evidence. Citations in support of this rule are unnecessary. Defendant, unwarrantedly, bases its argument upon Mr. Rogers' version of said conversation. Under the rule above mentioned, this position cannot be sustained. Defendant argues the cause of action, as stated in the petition is that—

" . . . while said policy was in full force and effect, and while one of the agents and servants of plaintiff was operating a Willys-Knight automobile owned by plaintiff and in plaintiff's service, and covered by said policy of insurance, . . . said automobile collided," etc.

And it is stated the issue submitted was as to whether estoppel or waiver will extend the policy of insurance so as to cover the loss which occurred before the alleged estoppel or waiver. It is argued the specific terms of the policy cannot be extended to cover a risk not covered by the policy by estoppel or waiver arising after the loss. In support of this position, defendant refers to clause "I" in the policy, as follows:

"No assignment of interest under this policy shall bind the company, and no words or provision in this policy shall be waived or altered except by indorsement hereon or attached hereto, signed by a duly authorized officer of the company; nor shall notice to any agent or other person, nor shall knowledge possessed by any agent or other person, be held to effect a waiver or change in any part of this contract."

The case of Case v. Lord, 236 Mass. 430, 128 N. E. 716, is cited, where the defendant was sued on a policy of insurance issued to a dealer which contained the following clause:

"All risks attaching hereunder are to be reported to this company as soon as known to the insured but no risk to be binding unless so reported and accepted, and for which a certain certificate is issued signed by a duly authorized agent of the company."

In that case, as here, the insured had not reported a certain automobile covered by the policy when damaged by fire. On appeal it was held where the car was not reported, as stipulated in the policy, there was no coverage and none could be established by estoppel or waiver, based upon an alleged interview with the company's agent after the plaintiff had received and accepted the policy. Defendant cites Palmer et al. v. Ins. Co., 294 Ill. 287, 128 N. E. 499, to the same effect. [Also Downs v. Casualty Co., 271 Fed. 310; Cecil v. Ins. Co., 165 Ky. 211, 176 S. W. 986; Rosenthal v. Ins. Co., 158 Wis. 550, 149 N. W. 155.] Defendant also cites the following Missouri cases: Banks v. Casaulty Co., 207 Mo. App. 357, 233 S. W. 78; Edwards v. Ins. Co., 7 Mo. 193. All the cited cases support the general rule that the scope of a policy cannot be broadened by waiver, but in none do we find the facts as presented in the case at bar.

It is plaintiff's contention that it alleged and proved a waiver by defendant of the condition subsequent in the policy relied upon by it and showed matters which estopped defendant from asserting a forfeiture. The petition alleges plaintiff had performed all conditions precedent required by the policy in issue. Under such allegation it was proper to prove waiver and estoppel, and if the condition was waived, it could not be regarded as part of the policy. The clause in the policy containing the provision for thirty days' notice of acquisition of a new car is set out above. Plaintiff insists, and we think properly, there is some doubt as to the exact meaning of this proviso clause and just what its purpose was. The entire clause has to do with the coverage of new automobiles acquired during the policy term. The policy was what is referred to as a "fleet" automobile policy and must be construed as covering all cars owned and operated by insured during the policy year; and to cover all new cars immediately upon their acquisition, thus avoiding the possibility of an accident with an after acquired car not covered and without the formality of applying of additional coverage.

The record shows the premium for the policy was based upon the number of cars covered, as per schedule. For the protection of the insurer in collecting additional premiums on after acquired cars not listed in the schedule, it was necessary to provide some method of informing the insurer of such acquisitions from time to time, and this was the purpose of the clause. We think it is clear the provision for reporting the acquisition of a new car was not for the purpose of allowing the insurer to say whether or not it was willing to extend coverage to such car, but rather was for the purpose of covering all cars owned or operated during the policy year. In our opinion, the policy is subject to the construction contended for by plaintiff. Such construction is reasonable. The policy was drawn by defendant and will be construed in a manner most favorable to the insured. [Block v. Guaranty Co., 316 Mo. 278, 290 S. W. 429; Swanson v. Casualty Co., 315 Mo. 1007, 287 S. W. 455; Wendorff v. Life Co., 318 Mo. 363, 1 S. W. (2d) 99]. Plaintiff points out the clause in question is to be regarded as a condition requiring compliance on the part of the insured, yet no penalty is imposed by the terms of the policy for failure of performance; that it was not a condition precedent to coverage attaching as to any automobiles acquired during the policy year. The clause reads:

"This policy is extended to cover automatically from the date of their acquisition any additional cars the insured may obtain by purchase or trade," etc.

We think plaintiff is right in this position. At most the provision imposed only a condition subsequent. As stated, the policy contains no forfeiture provision for failure to perform the condition. It is well settled in this State that if parties do not insert a forfeiture clause in the policy, the courts may not read such a clause into it. In the case of Malo v. Ins. Co., 282 S. W. 73, the policy provided for notice of loss and proof thereof, and that unless these requirements were fully met, no suit could be maintained. The court held, the policy having failed to provide for forfeiture for failure to give notice and furnish proof of loss within 60 days, forfeiture was not available. [Citing numerous cases.] To the same effect is the case of Everett v. Ins. Co., 7 S. W. (2d) 463, 468. Many other Missouri cases support this rule which we need not cite. Defendant insists the demurrer should have been sustained because plaintiff has failed to prove the cause of action alleged in the petition, and the cause submitted is a departure from the petition; and in this connection it is argued plaintiff's action is based upon the written contract and the court could not properly submit a case based upon an allegation in the reply; that it is elementary law that one cannot declare upon one contract and recover on another; that plaintiff must recover, if at all, upon the cause of action stated in the petition and not one stated in the reply. [Mathieson v. Ry. Co., 219 Mo. 542, 118 S. W. 9; Rosenberg

v. Ins. Co., 246 S. W. 1009.] , This objection is directed to the fact that the petition fails to plead waiver and the reply does so plead.

As already stated, the petition alleges plaintiff has performed all conditions precedent required by said policy, and under such allegation it was proper to prove waiver or estoppel by defendant to assert forfeiture. It is defendant's position that as waiver and estoppel were not specifically pleaded in the petition, and that such plea first appeared in plaintiff's reply, plaintiff was permitted to recover under the allegations in the reply, rather than those in the petition; therefore proof of waiver and estoppel amounted to a departure, or failure of proof.

The rule is well settled that in cases involving policies of insurance, the plaintiff may show matters of waiver or estoppel under a general allegation in the petition that the plaintiff has performed all the conditions required by the policy. The Supreme Court has decided this point in the recent case of Block v. Guaranty Co., 290 S. W. 429, l. c. 436 et seq., as follows:

"It has long been the established and well-recognized practice in this state, in suits upon insurance policies, to admit proof of waiver without requiring the waiver relied upon to be alleged in the pleadings; such proof having always been admitted under an allegation of performance of the terms of the policy by the assured. This, upon the theory that, if the terms of the policy have been waived by the conduct and course of business of the insurance company, they no longer constitute any part of the policy, and hence the general allegation of performance covers all proof that the assured is required to make. [Andrus v. Insurance Assn., 168 Mo. 151, 67 S. W. 582; Nickell v. Insurance Co., 144 Mo. 420, 46 S. W. 435; McCullough v. Insurance Co., 113 Mo. 606, 21 S. W. 207; Makos v. Insurance Co. (Mo. App.), 234 S. W. 369; Scott v. Insurance Co. (Mo. App.), 222 S. W. 1047.]"

The point needs no further discussion and is ruled against defendant.

It is urged the court erred in giving plaintiff's instruction No. 3, for the reasons set forth in appellant's argument under point 1, but as we have already determined point 1 against appellant's contentions, we need not discuss it further. Appellant insists the instruction is further erroneous because (a) it improperly declares the law; (b) because it submits improper elements to the jury; (c) because it is broader than the petition; (d) because it is broader than the evidence. The instruction complained of is plaintiff's main instruction. It is long and will not be here set out. A careful reading thereof shows it embodies the various matters of waiver and estoppel in evidence and that these matters were submitted in the conjunctive so that the jury was required to find all of them before finding in favor of plaintiff. As to the objection that the matter of unearned

premium was improperly included in the instruction, we find, under the provisions of the policy and the evidence presented, there was no error in this respect. Defendant also objects to the following clause in the instruction:

"If you further find that a suit or suits were pending against the plaintiff for damages on account of the death of said Boswell."

The objection is that the suit filed by Boswell was for injuries and there is no evidence there was a suit filed on account of this man's death, until it was filed as a friendly suit at the final settlement. We hold that under no view of the evidence could this matter be regarded as material, nor was it prejudicial. Moreover, this matter was submitted in the conjunctive, thus imposing an additional burden on plaintiff. There was no error in this respect. [Berry v. Railway Co., 26 S. W. (2d) 988, 996; Brasel v. Box Co., 220 S. W. 984.] That part of the instruction of which complaint is made, directing the jury to allow such sums as were "made necessary, if so, by defendant's said denial of liability" was proper. [Rieger v. Guarantee, etc., Co., 202 Mo. App. 184, 215 S. W. 920.] There was substantial testimony in support of this charge to the jury. The instruction was properly given.

Finally it is urged the court erred in refusing to give defendant's instruction "D" which told the jury that if they found plaintiff failed to pay any premium for insurance on the Willys-Knight car for a period to November 5, 1927, the verdict should be for defendant. The instruction was properly refused for several reasons. It was not based on the evidence which shows, per schedule, plaintiff paid defendant $12.64 premium on the Dodge car from April 5, 1927 to April 5, 1928. The Dodge was traded for the Willys-Knight on June 11, 1927, when only two months premium had been earned. The testimony shows that after the loss, as of November 12, defendant added the Willys-Knight car to the schedule and debited plaintiff's account with the sum of $1 difference in premium charged on the two cars to the end of the policy year. There was no error, therefore, in refusing the instruction for the reason assigned. The instruction was properly refused for another reason. It is the rule in this State that when an insurance company denies liability and states the ground, or grounds, for such denial, it waives all grounds not so specified. In its letter of November 16, 1927, defendant denied liability on the sole ground that plaintiff had failed to report acquisition of the Willys-Knight car within thirty days. No other reason for denying liability is assigned in the letter and defendant waived its right, if any, to deny liability on any other ground. This point is ruled on by the Supreme Court in Goffe v. Surety Co., 9 S. W. (2d) 929, 938, where it is said:

"Defendant clearly waived the requirement that the claim should be presented within three months after the expiration of the bond,

even assuming that it could at one time have made such a defense. It clearly waived such defense by failing to disclaim liability on that ground by undertaking to investigate the claim and by putting plaintiff to the trouble and expense of making proof of loss, after it had knowledge of such defense."

The instruction was properly refused. We fail to find reversible error of record, and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble P. J.,* absent.