Edna KAMMEYER and Alvin W. Kammeyer, Plaintiffs,

v.

CONCORDIA TELEPHONE COMPANY, a corporation, and Troy Brooks, Defendants-Respondents,

The Western Casualty and Surety Company, a corporation, Garnishee-Appellant.

No. 24783.

Kansas City Court of Appeals.

Missouri.

Oct. 6, 1969.

Aull, Hader & Sherman, by William Aull, III, Lexington, for appellant.

McKenzie, Williams, Merrick, Beamer & Stubbs, by Robert S. McKenzie, Kansas City, for respondents.

ALVIN C. RANDALL, Special Judge.

At the time of, and prior to, the events giving rise to this controversy, Troy Brooks was engaged, either in his individual capacity or as a member of a three-man partnership, in the business of removing old telephone equipment, including telephone poles. The Western Casualty and Surety Company issued its policy covering liability resulting from the business of "tearing down telephone lines and poles". The policy listed the named insured as "Troy Brooks, D. A. Weichold and R. L. Parker, DBA B. P. & W. Construction Co.". The effective date of the policy was February 19, 1959. The policy was for a period of three years, with one-third of the total premium being paid in advance, and one-third payable at the beginning of each subsequent year during the period covered. On July 2, 1959, Mr. Brooks entered into an agreement with Concordia Telephone Company, by which he agreed to remove telephone equipment in Concordia, Missouri, including telephone poles. There was also a provision in the contract by which Mr. Brooks agreed to hold the telephone company harmless from any loss occasioned by injury or damage sustained by members of the general public, resulting from any act or omission on the part of Mr. Brooks or his employees in the performance of the contract. The contract

was signed by Mr. Brooks, no reference being made to a partnership. The performance of the contract was completed on August 19, 1959.

On September 7, 1959, Edna Kammeyer fell and sustained injuries when she stepped in a hole caused by the removal of a telephone pole, which hole had not been adequately filled or covered. She and her husband brought an action against Brooks and the telephone company. The telephone company brought an action over, in the form of a cross-claim, against Brooks, relying on the hold harmless provision of the contract. On June 12, 1962, the action was tried. Judgment was entered in favor of Mr. and Mrs. Kammeyer and against the telephone company and Brooks in the sum of $1,500.00. This judgment was satisfied in full by the telephone company, and judgment was entered in favor of the telephone company against Brooks for $1,500.00, plus $863.12 for expenses and attorney fees. The validity of these judgments is not questioned.

In due course and by due process, the insurance company was summoned by the telephone company as garnishee. The issues were made up, with the insurance company generally denying any obligation to Brooks, the telephone company's judgment debtor. The issue was tried on September 23, 1963, before the court, a jury having been waived, and judgment was entered in favor of the telephone company (respondent herein) and against the garnishee-insurance company (appellant herein).

Appellant now contends that there are three reasons which require the reversal of the judgment against it: (1) The policy of insurance excluded "completed operations" of the insured, (2) The policy insured a partnership, while the injury to Mrs. Kammeyer resulted from the operations of a business conducted by Mr. Brooks in his individual capacity, and (3) The policy excluded liability for the contractual obligations of the insured, such as the "hold harmless" agreement which was the basis of respondent's judgment in its favor on the cross-claim. The first reason was first advanced by appellant shortly after the injury to Mrs. Kammeyer and before she filed suit. The second reason was first advanced by appellant during the actual trial of the garnishment action. The third reason was first advanced by appellant in its brief filed in this court.

The policy, under "exclusions", states that the policy does not apply to "the Products-Completed Operations Hazard". Under "Definitions of Hazards" is the following:

"Products-Completed Operations: (1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on the premises for which the classification stated in division 1 of Item 3 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

"(2) Operations, if the accident occurs after such operations have been completed or abandoned and occurs away from the premises owned, rented or controlled by the named insured, provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or

onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 3 of the declarations specifically includes completed operations."

■ In Rafiner Elevator Works, Inc. v. Michigan Mutual Liability Company, Mo., 392 S.W.2d 240, the insured elevator company had contracted with the owner of a building to make bimonthly inspections of a freight elevator, and to clean, oil and grease the machinery involved, and to make necessary minor adjustments if such could be made in less than thirty minutes. One such inspection was made on November 19, 1959. On December 17, 1959, one John Rowe was allegedly injured in the fall of the elevator. He sued the insured elevator company. The Supreme Court of Missouri held that the insurance company had the duty to defend its insured under a policy in which the excluded hazard was defined exactly as it is defined in the policy issued by appellant in the case at bar. The Supreme Court relied on, and expressly approved, the decision by the St. Louis Court of Appeals, in Kissel v. Aetna Casualty and Surety Co., 380 S.W.2d 497, which involved damage resulting from negligent grading and backfilling following the construction of a school building. Considering the opinions in Rafiner and Kissel together, we believe it is now the law in Missouri that an exclusion of the type here in issue refers to goods or products created or manufactured and placed in the ordinary channels of commerce, or intended to be so placed, as these terms are understood in common parlance, and that any effort to define "product" as the end result of any *activity* will be rejected; that services or "contracting work", as these terms are commonly understood, are not contemplated by the excluded hazard; that paragraph (1) of the excluded hazard clearly supports the above conclusions;

and that paragraph (2) refers to "operations" connected with the goods or products mentioned in paragraph (1); that if paragraph (2), standing alone, might reasonably be interpreted to refer to the performance of services, since it is *not* standing alone, the argument for such an interpretation would, at most, create an ambiguity, and the establishment of an ambiguity is not sufficient to justify a ruling that would limit or restrict coverage.

There is another fact that supports the above conclusions concerning the understanding between insured and insurer (or, lack of understanding, if one accepts the alternative finding of ambiguity). The exposure of a contractor to liability for injury to members of the public *after* the completion of his job is quite substantial. It is true that there is movement of employees, and possibly machinery, during the performance of the work. But in most circumstances, the public can be excluded by barriers, or warned by lights, signs or watchmen. But in many cases (the case at bar and the two cases cited, for example) the public must be admitted to the area when the job is completed. Furthermore, the time for performance of the work is limited, but the time during which a contractor may be exposed to liability for injury after the completion of the job is relatively unlimited. We may not conclude that a reasonably intelligent businessman would seek protection, and yet intend to so severely limit his protection, unless his contract clearly expresses such intention.

To consider the claim that there is no coverage, because Brooks allegedly acted individually rather than as a member of the insured partnership, it is necessary that we recite the history of appellant's reliance on the "completed operations" defense.

Mrs. Kammeyer's injury occurred on September 2, 1959. Mr. Brooks reported the claim to appellant's agent. Appellant's claims manager, in a letter dated September 11, 1959, stated that there may be a question as to whether the "incident" was

within the coverage provided by the policy, but indicated that they would inquire further into the matter. The claims manager wrote Mr. Brooks a letter on September 18, 1959, denying coverage on the ground that the injury occurred after the operations were completed. He requested a copy of the contract with Concordia Telephone Company "to complete our file". This copy of the contract was furnished to him. After suit was filed by Mr. and Mrs. Kammeyer, appellant, in a letter dated April 27, 1962, and directed to Mr. Brooks' lawyer, refused to defend Mr. Brooks and stated that "There is not the slightest doubt in our mind that the policy of insurance which we wrote for the B. P. & W. Construction Company does not cover the claim in question. Otherwise, the policy was not written to cover products and completed operations, essential to cover this type of claim."

Appellant first made the claim that there was no coverage, because Mr. Brooks performed the contract with the telephone company in his individual capacity, and not as a member of a partnership, during the trial of the garnishment action on September 23, 1963. Appellant relied primarily on the fact that the contract with the telephone company was signed only by Mr. Brooks, with no reference being made to a partnership. Appellant had a copy of this contract shortly after the accident occurred, and long before it refused, on April 27, 1962, to defend Mr. Brooks. Mr. Brooks testified that he, Mr. Weichold and Mr. Parker operated as a partnership. In answer to the question "Do you mean that you divide the expenses and the profits?", he answered, "Yes, we divide it." No details were given concerning profits and losses. He testified that he "sees to the business end of it and furnishes the equipment," while the other two do the actual work. As appellant notes, the judgment on the cross-claim was against Brooks only. However, this fact is not helpful to appellant, since a claimant may secure a judgment against only one member of a part-

nership. None of the facts brought out in the testimony is conclusive. Taking the evidence as a whole, we believe that the question of whether there was, or was not, a partnership, was left unresolved. However, it is not necessary that the question be resolved. Having denied coverage on a specified ground, appellant may not thereafter deny coverage on a different ground. Aetna Casualty and Surety Company v. Haas, Mo., 422 S.W.2d 316, 321; Ash-Grove Lime and Portland Cement Company v. Southern Surety Co., 225 Mo.App. 712, 39 S.W.2d 434, 441. At least this is true if the original denial was made with full knowledge of the facts. McCarty v. United Insurance Company, Mo.App., 259 S.W.2d 91, 94. Appellant had full knowledge of all the facts which it presented at the trial on the partnership question, long before the trial, and before its refusal to defend Brooks. Furthermore, the evidence showed that after its original denial of coverage, it continued to accept premium payments on the policy. Mr. Brooks was engaged in only one business that involved the removal of telephone poles and other telephone equipment, whatever his legal capacity may have been as employer of the other two men, or as their partner. If the policy did not cover this particular business, under the facts that were well known to appellant, then the insurance company, after the original denial of coverage, was accepting premiums and giving nothing in return.

Finally, appellant contends that the judgment of the trial court should be reversed because the policy excludes coverage for "liability assumed by the insured under any contract or agreement."

When Brooks and the telephone company were each served with the petition and summons in the Kammeyer lawsuit, the telephone company wrote Mr. Brooks, on January 3, 1962, demanding that Brooks assume the defense of the action on behalf of the telephone company and hold it harmless from any loss. The

letter expressly stated that the basis for this demand was the "hold harmless" agreement in the contract, the letter quoting at length from the language of said contract. This letter, together with a copy of the contract itself, was forwarded to appellant. Therefore, when appellant, on April 27, 1962, refused to defend Brooks or to pay any judgment which might be rendered against him, it was fully aware that the telephone company had chosen to use the contract with Brooks as the basis of its action over. The telephone company might well have proceeded against Brooks on another theory if appellant had then relied on the claim that it is now presenting on appeal. The legal principles discussed above apply equally to this defense.

■ In addition, defenses not presented in the trial court cannot be considered on appeal. Bennett v. Kitchin, Mo., 400 S.W. 2d 97, 103; Nulsen v. National Pigments & Chemical Co., 346 Mo. 1246, 145 S.W.2d 410, 414. Appellant calls attention to Supreme Court Rule 73.01(d), V.A.M.R. which provides that, in cases tried without a jury, on appeal "the question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court." Appellant cites Paro v. Pennsylvania Railroad Company, Mo.App., 348 S.W.2d 613, and Knoch v. Frye, Mo.App., 363 S.W.2d 737. But appellant does not come to grips with the real question, which is: Is appellant's contention of such a nature that it must be asserted, if at all, in the form of an affirmative defense? If so, appellant cannot raise it for the first time on appeal, because its validity or invalidity has nothing to do with the sufficiency of the evidence to support respondent's case.

■ The insurance policy issued by appellant, under "Schedule of Coverages" reads: "tearing down telephone lines and poles rated as: telephone or telegraph companies—all operations including outside salesmen, collectors, messengers and clerical." Following that is the applicable "insuring agreement", which says that appellant agrees with insured "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person caused by accident arising out of the hazards hereinafter defined." Then follows "definition of hazards", and the one applying to the coverage which was secured in this case merely says "premises-operations: the ownership, maintenance or use of premises, and all operations." And finally, the policy lists what it refers to as exclusions, one of which is "this policy does not apply to liability assumed by the insured under any contract or agreement." We note that the language of the policy which extends general coverage provides that appellant will pay sums which the insured "shall become legally obligated to pay." In other words, it is a general liability policy. There is no effort to confine the coverage to those instances in which liability is imposed on the insured on the theory of negligence. As long as a person was injured, and as a result thereof the insured "became legally obligated to pay", there was coverage. The exclusion attempts to reduce the coverage which had been granted, to make an exception to the general liability clause. If appellant did have a defense based on the exception, in order to take advantage of it, appellant would have had to set it up as an affirmative defense. Gennari v. Prudential Insurance Company of America, Mo., 335 S.W.2d 55, 61; Beem v. General Acc. Fire and Life Assur. Corp., 231 Mo.App. 685, 105 S.W.2d 956, 959.

The judgment of the trial court is affirmed.

HOWARD, P. J., and CROSS, J., concur.

SHANGLER, J., not participating.