**Timothy F. STONE, Appellant,**

v.

**Clarence G. WATERS, Defendant,**

v.

**PHOENIX ASSURANCE COMPANY OF NEW YORK, Respondent.**

**No. 25702.**

Missouri Court of Appeals, Kansas City District.

June 5, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 1972.

Application to Transfer Denied Sept. 11, 1972.

Earl L. Nagels, Overland Park, Kan. (Granger & Nagels, Overland Park, Kan., of counsel), for appellant.

Jack G. Beamer, Kansas City (McKenzie, Williams, Merrick, Beamer & Wells, Kansas City, of counsel), for respondent.

PER CURIAM:

In this garnishment action in aid of the execution of a $10,000.00 judgment recovered by appellant Stone against defendant Waters, the trial court found for respondent Phoenix Assurance Company of New York on its so-called Garage Insurance policy of insurance. Stone was a passenger in an automobile titled in Waters' mother, Geraldine Potter (but there was evidence that the automobile, a 1965 Chevrolet, was paid for by another one of Geraldine's sons who was in the military service). The automobile was being driven by Waters on October 15, 1968, when it struck a tree, causing Stone to suffer a broken back.

The policy was issued to Geraldine's husband, "Allen C. Potter DBA B & H Auto Service, 5413 Prospect, Kansas City, Jackson County, Mo.", for a period from August 24, 1968 to August 24, 1969. Under Item 3 it provided, "The insurance afforded is only with respect to such of the following Coverage Parts as are indicated by specific premium charge or charges."

Following that the premiums specified are "Uninsured Motorist $5", and "Garage Insurance $452". Under the garage liability insuring agreement, "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of G. bodily injury or H. property damage to which this insurance applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded as indicated in the declarations, * * *."

The basis for denial of coverage of the policy was that neither Geraldine nor her son Clarence G. Waters were named insureds under the policy because they were not residents of the same household as Allen C. Potter at the time of Stone's injury. This was the sole ground of such denial stated in a letter to Geraldine with a carbon copy to Allen. It is based upon Auto. 6782 endorsement, "INDIVIDUAL NAMED INSURED" which states that the insurance afforded is modified as to garage and automobile medical payments: "It is agreed that the insurance applies with respect to the individual named in Item 1. [Allen C. Potter] of the declarations, subject to the following additional provisions: 1. Additional Definitions When used in reference to such insurance (including this and other endorsements forming a part of the policy): *named insured* includes the spouse of the individual named in Item 1. of the declarations if a resident of the same household, except with respect to notice of cancellation; *relative* means a *relative* of the *named insured* who is a resident of the same household." [Italics indicate bold type.] Under the Garage Insurance endorsement (Auto. 6695) under paragraph IV. PERSONS INSURED, it is stated, "Each of the following is an insured under this insurance to the extent set forth below: Under the Garage Bodily Injury and Property Damage Liability Coverages: (1) the named insured; * * * (3) with respect to automobile hazard: (a) any person while using, with the permission of the named insured, any automobile to which the insurance applies under the automobile hazard, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, * * *."

The Garage Insurance endorsement continues: "'automobile hazard' means that one of the following hazards for which insurance is afforded as indicated in the schedule: Automobile Hazard 1. (1) The ownership, maintenance or use (including loading and unloading) of any automobile for the purpose of garage operations, and (2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and (3) the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person."

Following "Automobile Hazard 1" (and other provisions) is a Schedule. Item 2(b) of the schedule provides: "automobiles owned by the named insured are furnished to the following persons or organizations for their regular use for other business purposes or for non-business purposes (do not list the named insured, any partner, member, executive officer or, if a resident of the same household, the spouse of any of them, unless more than one automobile is furnished concurrently to such person and then show only the number of automobiles so furnished in excess of one): Name * * * Number of Such Automobiles."

Allen C. Potter testified that on October 15, 1968, his home was at 7112 East 107th Street in Kansas City, Missouri, and his garage was then at 5413 Prospect Avenue. He was then sleeping at the garage most of the time. He bought the policy from Bud Willing Insurance Agency, a broker, and was attempting to obtain garage liability insurance, "and I asked at the time if my wife and boy was covered under this insurance." Allen was married to Geral-

dine November 23, 1957, and he never contemplated a divorce proceeding and did not intend to—he was happily married to Mrs. Potter. The two of them resided under one roof for about 7 years. He slept most of the time at the garage because there was trouble with an older boy, and he and Geraldine agreed that until they could get the boy straightened out they would live that way. Allen had paid for the furniture in the house where he visited his wife frequently, and spent nights with her. She did his washing. He paid the rent, the utilities, and gave his wife money to live on. Geraldine stayed with him at nights in the garage where he had a room fixed up. Allen's personal mail (garage business mail) came to the garage, but he did receive mail at the house. He considered 7112 East 107th as his home. "A. Well, actually it is my home. I am the head of the place there. It is my household. I take care of it. * * * Well, as far as I am concerned, that is my household, and my boy was a resident, and my wife was too. * * * We file joint income tax. I pay all the bills. If there was anything about not being a regular household, I don't know what it could be." On cross-examination it was developed that Allen's wife and her three children resided at the house while he resided at his garage on Prospect. The younger boy's name was Clarence; and Allen had a stepson named Terrence, and there was an older boy, Fred, who lived there. Allen's wife was not a partner in the business, but worked elsewhere. On October 15, 1969 (1968?) Geraldine had two cars titled in her name, a 1959 Chevrolet 4-door hardtop and a 1965 Pontiac GTO, neither of which were used in the garage business—they were just personal cars for her use and the boy's use if she wanted to let him. Allen had 4 cars; two titled in his name and used by him, and two titled in Geraldine's name and used by her. None of these cars were endorsed on the insurance policy by description.

In February, 1968, Terrence McIntosh, the middle boy, bought a 1965 Chevrolet Sport Coupe, with money from his grandmother's estate. It was not used in the garage business, but Geraldine drove it some. Allen did not drive it. Terrence was not home, but was then in the military service. Geraldine bought the car for him and took title in her name in order to hold the car for him. When Terrence returned from the service, title and all would be given him.

■ One of the points which Phoenix makes in argument, a fact which the trial court found, is that the 1965 Chevrolet Sport Coupe was not owned by Allen or Geraldine, but was owned by Terry McIntosh. Such fact does not constitute a defense to the garnishment action. "Since motor vehicle liability insurance ordinarily covers legal liability for injury to person or property of others resulting from ownership, maintenance, or use of a motor vehicle, an insurable interest may exist apart from ownership, or complete ownership, where the circumstances are such that insured may be legally responsible for damages resulting from its use." 44 C.J.S. Insurance § 198, p. 896. The reason for such a rule is amplified in Commonwealth Casualty Co. v. Arrigo, 160 Md. 595, 154 A. 136, 137, "In the case before us, the risk and hazard insured against is not the injury or loss of the property named in the policy, but against loss and injury sustained by others, caused by the use of the property therein named, for which the assured, as its titled owner, might be liable, and the right of the assured to recover does not depend upon his being the holder, in fact, of either a legal or equitable title in the property, but whether he, the holder of the title, as stated in the certificate of title issued by the motor vehicle commissioner and in the policy of insurance, is primarily charged at law or in equity with an obligation for which he is liable." See also Kahn v. Lockhart, Mo.App., 392 S.W. 2d 30, 37 [8], "It is the settled rule that it is not necessary that the insured * * * have an insurable interest in the automobile *insofar as liability insurance is con-*

*cerned.*" (Citing cases.) It is thus immaterial to the disposition of this case that Terry McIntosh owned the car, if Geraldine Potter is a named insured within endorsement Auto. 6782, supra.

The matter of whether a person is a resident of the same household of an individual named insured so as to be afforded coverage in a liability insurance policy has been considered in a number of cases analogous in principle to this case. In Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Swit., 35 N.J. 1, 170 A.2d 800, the issue required a construction of a comprehensive personal liability insurance policy which extended coverage to the spouse of the named insured if she was a resident member of the household. In December, 1945, the husband and wife separated, and in 1947 he moved into a new house 150 feet away from the bungalow where they formerly resided together and in which he provided the furniture. The husband did not live in the bungalow after 1945, but he provided and maintained it as well as supporting his wife and son, with whom the father had close contact. It was said, loc. cit. 170 A.2d 804 [3], "Household is not a word of art. Its meaning is not confined within certain commonly known and universally accepted limits. True, it is frequently used to designate persons related by marriage or blood, who dwell together as a family under a single roof. [Citing cases and authority, and compare State ex rel. Bowden v. Jensen, Mo., 359 S.W.2d 343, 349.] But it has been said also that members of a family need not in all cases reside under a common roof in order to be deemed a part of the household (citing cases)." In affirming the judgment that the wife was a resident of the husband's household, the court said it was proper for the trial court to call a jury to determine the facts on the issue. In American Casualty Co. v. Harleysville Insurance, 238 Md. 322, 208 A.2d 597, where the issue was whether policies written by the two companies were primary or excess coverage, the court held that the wife who was solely dependent upon her husband for support but was separated from him at the time when she was involved in a collision, and was then staying away at night only, was a "named insured" by reason of being a resident of the same household as her husband. The court there cited and adopted the reasoning in Lumbermens Mut. Cas. Co. v. Continental Cas. Co., Alaska, 387 P.2d 104, * * * "that temporary absences are quite frequent in a normal household due to emergencies or other reasons, and if narrow interpretations were applied, then there would be no coverage during those temporary separations." And " * * * that the insurer's risk was no greater than if the named insured had been away on a business trip, vacation, or because of some family emergency." (208 A.2d 599.) In Aetna Casualty & Surety Company v. Miller (D.C.Kan.) 276 F.Supp. 341, there was a separation and a pending divorce action brought by the husband at the time of the collision in which the wife was involved. The husband and wife differed as to whether their relationship was together or apart—the wife took only a part of their mutual property when she left the husband. The policy was a "Custom-Rite (Family Automobile Policy)" supporting the inference that it was to protect all members of the family as long as such family relationship legally existed, and the policy was taken out during the marriage of the parties. The court referred to the public interest nature of the insurance business, and the amelioration of the harsh effects of uncompensated automobile acts (276 F. Supp. 347, 348). Under all the facts the judgment was that the wife was a named insured by reason of being a resident of the same household as the husband. See also 44 Am.Jur.2d Insurance, Section 1408, p. 255; and compare Basore v. Allstate Insurance Company, Mo.App., 374 S.W.2d 626, 629, holding (although the husband and wife lived together) that the definition in the policy of "insured" included the spouse.

■ Under the facts of this case it is clear that Allen C. Potter's home or resi-

dence was at 7112 East 107th Street, notwithstanding that at the time of the collision he was staying at his garage. That temporary sleeping place was used for the stated reason that Allen did not get along well with one of Geraldine's sons, and it is clear that as soon as the son was "straightened out" Allen and Geraldine intended to live together as they had before. There is no question but that the relations of this couple were amicable. There were no divorce proceedings and none were intended to be brought. Allen paid the home expenses, including rent and utilities, and gave Geraldine money to live on. They stayed together nights at the garage, and they visited each other often. Under the facts of this case, and under the foregoing authority, it must be held that Geraldine was a named insured by reason of being the spouse of the individually named insured residing in his household.

■ Stone says also that defendant Waters was a named insured by reason of being a relative of the named insured residing in the same household under "Additional Definitions." That provision does not specifically define a relative residing in the same household as a named insured as does the preceding clause relation to a spouse. The only reference made to a relative is under the uninsured motorist clause which specifically grants that coverage to "(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either." The "relative" clause does not confer coverage to Waters.

■■ As stated, Phoenix's sole ground of denial of liability initially was contained in its letter to Geraldine and a carbon copy thereof to Allen, and was that endorsement Auto. 6782, above, controlled in that Geraldine did not reside in Allen's household. Stone says that Phoenix is barred from asserting the additional defense at trial (and here) that Geraldine's automobile as an additional vehicle was not listed in Item 2.(b) of the schedule of the policy. That

provision is set forth above. Under the terms of Item 2.(b) of the schedule of the policy, Geraldine (being a "named insured" under the policy by reason of being a resident of her husband's household, as above held) had coverage for one automobile for non-business use. The defense that the automobile involved in the collision was not listed in the schedule is in fact additional to the first sole ground of denial of liability. In such a case decisions in this state to the effect that an insurer, having denied liability on a specified ground, may not thereafter deny liability on a different ground, become applicable. In Kammeyer v. Concordia Telephone Company, Mo. App., 446 S.W.2d 486, the insurer first advanced a sole reason for no coverage that the policy excluded "completed operations" of its insured shortly after the injury to Mrs. Kammeyer and before she filed suit. At trial in the garnishment action, a second reason that the policy covered a partnership and the injury resulted from individual operations of Troy Brooks was advanced. As to this additional defense, the court said, "Having denied coverage on a specified ground, appellant may not thereafter deny coverage on a different ground. Aetna Casualty and Surety Company v. Haas, Mo., 422 S.W.2d 316, 321; Ash Grove Lime and Portland Cement Company v. Southern Surety Co., 225 Mo.App. 712, 39 S.W.2d 434, 441. At least this is true if the original denial was made with full knowledge of the facts. McCarty v. United Insurance Company, Mo.App., 259 S.W.2d 91, 94." The reason for the rule is clearly that the insured (garnisher) has acted on the asserted position of the insurer and incurred prejudice (having no opportunity to meet the new defense) or expense of bringing suit. 43 Am.Jur.2d Insurance, Section 1146, p. 1069; and the there noted case of Smith v. German Ins. Co., 107 Mich. 270, 65 N.W. 236, 239, "Good faith required that the company should apprise the plaintiff fully of its position; and, failing to do this, it estops itself from asserting any defense other than that brought to the notice of plaintiff."

Reference should be made also to 16A Appleman, Insurance Law and Practice, Section 9260, p. 673 et seq., and pocket parts.

Another of Phoenix's claims to avoid an estoppel or waiver of its additionally asserted defense is that there was no proof that at the time it made its denial it had full knowledge of the facts (i. e. "knowledge as to the ownership of the accident car, as to whether or not such car was being used in the named insured's garage business or with the owner's permission or as to who was operating the car at the time of the accident or even as to whom claim was being made against"). There is indeed no evidence as to the extent of Phoenix's investigation of the accident and attendant facts with reference to the policy. The accident happened on October 15, 1968, and Phoenix wrote its letter to Geraldine on January 6, 1969, saying, "We have now completed our investigation of the above captioned file" after which it denied coverage on the specified grounds. It is thus apparent that Phoenix, having made an investigation, had the means of acquiring knowledge of the facts and other defenses which it now says Stone did not prove. Phoenix must be held to know that its policy which it issued covered one automobile used for non-business purposes by the named insured and his spouse residing in the same household. Any reasonable investigation would have revealed the basis for a defense that the automobile involved in the collision was additional to the one allowed Geraldine under Item 2.(b) of the schedule. In Perbal v. Dazor Manufacturing Corp., Mo., 436 S.W.2d 677, 686, quoting State ex rel. Bell v. Yates, 231 Mo. 276, 132 S.W. 672, 676, the principle governing Phoenix's claim is set forth: " 'he who has at his disposal the means of knowing is held to know; that he who shuts his eye[s] when to open them and look is to see is held to see; and that, where there is a duty to use diligence, those facts which diligence will discover are presumed to be known under the law of notice.' " See also Brooks Transp. Co.

v. Merchants' Mut. Casualty Co., Del. Super., 6 W.W.Harr. 40, 171 A. 207, 211, "I say to you that when a company renounces its liability upon a policy and gives the reasons therefor, the reasons mentioned by the company are deemed to be exclusive and it cannot thereafter at the trial rely upon others. This statement, however, embraces only those reasons within its knowledge or as to which it had the means of acquiring knowledge at the time of its expression of reasons for renouncing its liability.", and 23A Words and Phrases, 490, "Means of knowledge."

Phoenix argues also that neither waiver nor estoppel can be used to create a cause of action but only to preserve pre-existing rights. There existed coverage here as to Geraldine because she was a spouse residing in the same household as Allen C. Potter. The ruling herein that Phoenix may not assert a new and additional defense to that contained in its letter of January 6, 1969, merely preserves Geraldine's pre-existing rights. Cases such as Blew v. Connor, Mo., 328 S.W.2d 626; McKee v. Travelers Insurance Co., Mo.App., 315 S.W.2d 852; and Maryland Casualty Co. v. The Fidelity & Casualty Co. of New York, (D.C.Mo.) 313 F.Supp. 560, involve facts showing that there was no coverage to begin with.

As noted, Geraldine's son, Clarence G. Waters, was not a named insured under the liability insuring agreement by reason of being a relative residing in the insured's household. His coverage must result from the omnibus provision of the policy and be derived from his permission to drive the car by an owner named insured in the policy. The burden of proof to show coverage is upon appellant Stone, including the only ground therefor which can exist: permission to drive the car. 46 C.J.S. Insurance § 1321, p. 459; Varble v. Stanley, Mo.App., 306 S.W.2d 662, 666 [4–7]; and Mistele v. Ogle, Mo., 293 S.W.2d 330, 332 [1–4]. Understandably, because of the nature of Phoenix's denial of cover-

age *en toto*, and the issues made up of interrogatories and answers, the issue of permission was not considered. In fairness, it should be considered.

The judgment is reversed and the case remanded for consideration of the sole issue of permissive use under the omnibus clause of the policy.