## Richmond.

MONGER v. ROCKINGHAM HOME MUTUAL FIRE INSURANCE CO.

November 17, 1898.

Absent, Cardwell and Riely, JJ.

1. MUTUAL FIRE INSURANCE—*Case at Bar—Membership—Assessments.*—The plaintiff became a member of the defendant company by an original certificate of membership issued to her in pursuance of the constitution of the defendant company, and having paid all assessments made against her, is, under the evidence in the case, entitled to recover for the loss sustained by her under the contract of insurance made with her. As assessments for losses are merely personal debts and not liens on the property, under the terms of the constitution of the defendant company, she is not liable for prior assessments made against her father under a certificate of membership held by him, as she does not claim under or in privity with him, but under a certificate as an original member of the company.

2. INSURANCE—*Failure to Pay Assessments—Forfeiture—Waiver.*—If a forfeiture of an insurance policy for non-payment of assessments is relied on, the fact that subsequent assessments are made and received by the company, without making any reference to the non-payment of the prior assessment, is evidence tending to show a waiver of the forfeiture, and, for that purpose, should be submitted to the jury under proper instructions. When the right to rely upon a forfeiture has been once waived it is extinguished, and cannot be revived.

Error to a judgment of the Circuit Court of Rockingham county rendered April 16, 1898, in a proceeding by motion for a judgment wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*O. B. Roller & Martz* and *Sipe & Harris*, for the plaintiff in error.

*Winfield Liggett*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

The case is before us upon exceptions taken by C. V. Monger during the progress of the trial of an action brought by her in the Circuit Court of Rockingham county against the Rockingham Home Mutual Fire Insurance Company, in which judgment was rendered for the defendant.

The mother of Mrs. Monger, who was Mrs. J. J. Showalter, was devisee for life, under her father's will, of certain real estate in the county of Rockingham, with the remainder to her daughter, Mrs. C. V. Monger. After the death of Mrs. Showalter the petitioner's father, J. J. Showalter, remained in the possession and control of the property of his daughter, they continuing after the daughter's marriage to reside together and constitute one family. The buildings upon this property were, during the life-time of Mrs. Showalter, insured in the Rockingham Home Mutual Fire Insurance Company. According to the laws of that company, property insured in it is subject to revaluation at intervals of five years.

The charter of the company provides, among other things, that "all persons subscribing to this charter of incorporation, and pledging themselves to be governed by any constitution, by-laws, regulations or requirements adopted by said company, in pursuance thereof, their executors, administrators and assigns, and vendees continuing to be insured therewith, shall thereby become members of said company during the time they shall remain insured therein, or until they shall withdraw from the company in accordance with its prescribed regulations."

By sec. 4, article 3, of the constitution, it is provided that " Whenever a member of the company dies, his widow or

Opinion.

other legal representatives shall be considered as holding the same relation to the company as that held by the deceased member, unless proper notice is given in thirty days that she or they wish to withdraw from the company, then the property shall be stricken from the books, provided there are no charges against it."

By sec. 5, article 3, of the constitution, it is provided that " Whenever a member of this company sells, trades, or otherwise disposes of his property, the party buying, trading for, or otherwise obtaining said property, shall notify the secretary in ten days thereafter that he wishes the insurance on said property continued in his name, otherwise it shall be stricken from the books. In the meantime the company will not be responsible for said property until it is properly transferred in the new owner's name."

The constitution also provides that whenever a member's property is burned, the president shall, as soon as he is apprised of the fact, call the board of directors together, and, upon proof of loss, levy a tax upon each member in proportion to the amount of his property insured in the company, to meet such loss, and as soon as the assessment is fixed, it is the duty of the secretary to notify members, who are then required to pay promptly to the treasurer, who in turn pays it over to the member sustaining the loss. Upon joining the company every person is required to waive the benefit of the homestead, bankrupt, and all exemption laws, as to any such assessment upon his property.

By sec. 3, article 5, it is provided " that any member failing to pay over the amount of his or her assessment in sixty days, after proper notification, shall have fifty *per centum* added thereto; it shall then be placed in an officer's hands for collection, and, when collected, the name of the delinquent member shall be stricken from the books; and further, should the property of any member burn whilst he or she is delinquent, neither he nor she shall receive pay therefor."

A person became a member of the company by signing the constitution, and pledging himself to be governed by it, or as heir of a deceased member, or by acquisition of the property by purchase, exchange, or otherwise, and giving proper notice as required by secs. 4 and 5 of article 3, above quoted. In no other mode could membership be acquired in this company.

As evidence of membership, a certificate was issued upon which a description and valuation of the property insured appears with the name of the insured, the date of insurance, and the time during which it is to remain in force. In the case of the death of a member, or the sale or other disposition of the. property insured, the company, upon notice that the heir or transferee wished to continue insured, wrote upon the certificate the words, " Transferred to," naming the person who was thereafter to be the beneficiary of the insurance.

Now, in this case the property belonged to Mrs. Showalter for life, and was first insured in her name. After her death, it stood insured in the name of J. J. Showalter, and the assessments were made out against and paid by him, but on the 23d of August, 1894, the control of the property was turned over to Mrs. C. V. Monger, who had the title thereto after the death of her mother, under the will of her grandfather; and thereupon a certificate, number 381, was issued to her. The valuation of the property as stated therein, \$3,465.00, and a descriptive list of it, appears upon the certificate. It embraces all property that had been theretofore insured, and other items which, at the revaluation made in July, increased the amount of insurance from \$3,100, as stated in the certificate issued to J. J. Showalter, to \$3,465.

Prior to the 23d of August, 1894, assessments had been made against J. J. Showalter for two losses on account of the destruction of property belonging to Rodeffer and Carpenter. The assessments amounted to \$1.55, which sum was demanded of J. J. Showalter in a notice dated October 4, 1894, and again in a notice dated March 8, 1895.

In May, 1895, there was a meeting of the members of the company, at which a list of delinquents was read, and upon that list the name of Mrs. C. V. Monger appears as delinquent, with respect to the Rodeffer and Carpenter losses, and thereupon C. V. Monger, her husband, who was present at the meeting, stated that he would pay them. It seems also that Mrs. Monger, while not actually in the meeting, was near at hand, and was informed that the company held her responsible for the $1.55, and it was after this that the notice of the assessment of June 19, 1895, was sent to her which embraced $1.55 as due on the Rodeffer and Carpenter losses, and $1.39 on the Wagner loss, aggregating $2.94 of past due assessments.

It is conceded that Mrs. Monger has paid all of the assessments against her made since the 23d of August, 1894.

In June, 1897, her barn, valued at $1,100, was destroyed by fire, and, the company refusing to pay, this suit was brought to recover $733.33, being two thirds of the appraised value of the property destroyed.

The company defended upon the ground that, at the date of the loss, the plaintiff was delinquent in the payment of Rodeffer and Carpenter assessments which, as the defendant claimed, had been properly levied against her.

The plaintiff contended before the jury (1) that she had paid all assessments; (2) that the controverted assessments were not due by her; (3) that the company by its conduct waived any forfeiture that had occurred by reason of the failure to pay the controverted assessments.

There was some conflict of evidence as to whether or not the $1.55 in controversy had been paid to the company, but the verdict of the jury must be considered as having decided that question of fact in favor of the defendant. It therefore remains for us to enquire first, whether Mrs. Monger was ever liable for that assessment; secondly, whether, if liable, the company had waived its right to enforce a forfeiture on account of it.

The liability of Mrs. Monger for assessments was purely personal. The assessments constituted no charge or lien upon the property insured. It is claimed, however, on behalf of the company that she is liable by virtue of her succession to the benefit of the policy taken in the name of J. J. Showalter, her father. She does not claim as heir at law of J. J. Showalter, nor as the purchaser from him, nor as having derived any right, title, or interest in the property insured by or through him. She does not stand upon the certificate originally issued to him, and by the company, after due notice in accordance with its charter and constitution, transferred to his successor, but she appears before the court standing upon her rights as shown by a certificate of membership issued to her, not as transferee, but as an original member of the association. It is true that upon what is known as the "property book" of the company, in which the names of the members of the association and a list of their property appears, it is stated that on August 23, 1894, the insurance theretofore standing in the name of J. J. Showalter had been transferred to Mrs. C. V. Monger, but the evidence of her membership is to be found in the certificate issued to her on that date. The fact that the company, on October 4, 1894, and on March 8, 1895, demanded payment of the Rodeffer and Carpenter losses of John J. Showalter is strongly persuasive that it, at that time, regarded Mrs. Monger as an original member, and not as successor to the rights of J. J. Showalter under the certificate issued to him, and as liable for assessments made against him.

We are of opinion that Mrs. Monger was not liable to the company for the Rodeffer and Carpenter assessments.

This conclusion is decisive of the case, but we are also of opinion that there is evidence tending, and strongly tending, to show a waiver upon the part of the company of its right to the forfeiture on account of the delinquency of Mrs. Monger in the payment of the Rodeffer and Carpenter assessments, assuming that she was liable for them. Those losses occurred

prior to the 23d of August, 1894.   On that date a certificate
was issued in her name recognizing her as a member of the
defendant company, and insuring her property.   At intervals
from that time until the destruction of her property, assess-
ments were made against her as losses occurred, which she
paid and the company received.   These facts are evidence
tending to show a waiver of the forfeiture relied upon which
should have been submitted to the jury under proper instruc-
tions.

The case of *Rice* v. *New England Aid Society* (Mass.), 15
N. E. 624, is in point.   Rice had insurance upon his life.   He
was in default as to the payment of an assessment.   The com-
pany had a right to declare a forfeiture, but subsequently
received the assessment with the condition stamped on the
certificate, "Received on condition that member is in good
health."   Nothing was said by Rice as to his health, nor any
inquiries made by the company as to it at that time, and after-
wards the company levied and received unconditionally six
assessments, when Rice died.   It appeared that, at the date of
the receipt of the first premium with respect to which he was
in default, Rice was not in good health, and it was contended
by the company "that the condition of the former acceptance
reaches forward and applies also to the later payments; and
that it is not bound by later assessments which it made, and
later payments which it received, in ignorance that the assured
was in ill-health at the time of the former payment."   "But,"
said the Court, "the company cannot be allowed in this way
to imply a condition in favor of a forfeiture.   It had knowledge
on the former occasion that the payment had been made too
late, and that the money had been accepted with a condition
annexed.   If, before levying a new assessment, the company
wished to know the particulars as to Mr. Rice's health, and
thus to determine whether that payment was valid or not, it
was incumbent on it to make inquiry.   Instead of doing so;
instead of notifying him that it wished for some positive evi-

dence or statement upon the subject; instead of imposing a further condition, relating back to the time of the former payment,—the company made an unconditional call upon him for the payment of the new assessment. * * * *Suppose the payment of the former assessment had never been made at all;* and the company, without insisting upon the non-payment as a ground of forfeiture, had levied new assessments upon the assured, which were all duly paid and accepted without condition, could it be contended that there was no waiver? An unconditional acceptance of an assessment waives all former known grounds of forfeiture."

In the case of *Rowswell* v. *Equitable Aid Union*, 13 Federal Reporter 840, the assured had neglected to pay the sum required to be paid within thirty days after the presentation of his application, which was dated April 10, 1880, but the benefit certificate was delivered to the assured on the 12th of May, 1880, more than thirty days having passed, and it appears that it was issued with full knowledge of the default. The certificate recites that the party to whom it was issued " is a beneficiary member of Pioneer Union No. 46, E. A. U., in good standing," and subsequently he was recognized as a member by two assessments being levied upon him. Says the court: " These acts waived the default. Having formally and deliberately declared the assured to be a member in good standing, and having twice demanded his money as such member, it is too late after his death to assert the contrary. Carried to its logical conclusion, the doctrine contended for would enable the defendant to nullify a certificate after it had for years recognized the holder as a member, assessed him as such. It is unreasonable to argue that the assured could be a member for the purpose of making contributions to others, but not a member when advantage to him or his beneficiary accrued—a member not to receive, but only to give."

Now in this case it may be contended that there was as to Mrs. Monger no unconditional acceptance, because the $1.55

is demanded as late as the 22d of May, 1897, on what is known as the Heatwole loss, and notification was given that failure to pay would be attended by forfeiture, but after she became a member there is evidence that she made payments as to which no conditions were attached, as for instance, the Boyer loss. She was notified of this loss, and that it had not been paid. Upon the notice there is not one word with respect to the Rodeffer and Carpenter losses. That this is evidence tending to show waiver of forfeiture is plain, and the right to forfeiture once waived was of course extinguished, and could not be revived.

The judgment of the Circuit Court must be reversed, and a new trial awarded, to be proceeded with in accordance with the principles herein enunciated.

*Reversed.*