# Richmond

## HARTFORD FIRE INSURANCE COMPANY v. MUTUAL SAVINGS AND LOAN COMPANY, INCORPORATED, &C.

January 21, 1952.

Record No. 3852.

Present, Hudgins, C. J., and Eggleston, Spratley and Whittle, JJ.

The opinion states the case.

*Rixey & Rixey,* for the plaintiff in error.

*Herbert & Bohannon,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

On September 19, 1949, M. E. Ferguson purchased from the Seven Star Garage, of Carlisle, Pennsylvania, a Buick auto-

mobile and registered the same in his name under the laws of Pennsylvania. At the same time he purchased a combination indemnity and fire insurance policy on the automobile from the Hartford Accident and Indemnity Company and the Hartford Fire Insurance Company (hereinafter designated "Hartford") through J. Rodney Fickel, agent for Hartford, at Carlisle, Pennsylvania. It was stated in the policy that the automobile was not subject to a lien or other encumbrance. A few days later, on request of the purchaser, a rider was attached to the policy indicating that the automobile was owned by M. E. and Jane K. Ferguson. No other rider or endorsement was attached to the policy.

On October 26, 1949, M. E. and Jane K. Ferguson borrowed from the Mutual Savings and Loan Company, Inc., of Norfolk, Virginia, (hereinafter designated "Mutual") $1,000, for which they gave their note, and, as security for its payment, executed a deed of trust conveying the automobile to Wiley W. Wood, trustee. The Pennsylvania certificate of title to the automobile and the insurance policy issued thereon were delivered to Mutual, and the certificate of title, the note and the deed of trust were sent to the Division of Motor Vehicles of Virginia and there a Virginia certificate of title, on which Mutual's lien was endorsed, was issued. On the same day (October 26, 1949) Mutual mailed a letter to J. Rodney Fickel, agent for Hartford, at Carlisle, Pennsylvania, stating that it held a lien for $1,000 on the automobile and requesting that its lien be noted on a rider to be attached to the policy.

On October 28, 1949, two days after the loan was consummated, the automobile was partially destroyed by fire in Stafford County, Virginia. M. E. and Jane K. Ferguson, the named insured, promptly made claim against Hartford for the loss. They filed proof of loss in the form of an affidavit, stating that the certificate of title and insurance policy were in the automobile and burned; that they were the sole owners of, and no other person had an interest in, the automobile, and there were no liens or other encumbrances on it. The adjuster for Hartford accepted these statements as true and agreed to pay the insured the sum of $2140.50 in full settlement of the loss and permitted them to retain the damaged automobile.

On November 22, 1949, Hartford, at its home office in Hartford, Connecticut, issued its draft in the sum of $2140.50, payable

to M. E. and Jane K. Ferguson, and mailed it to them in Norfolk, Virginia. The payees endorsed the draft and cashed it at the Seaboard Citizens National Bank of Norfolk.

On November 23, 1949, M. E. Ferguson telephoned Mutual that the automobile had been damaged by fire on October 28th, near Fredericksburg, Virginia, and that he had left it in its damaged condition with Klotz Auto Parts at Fredericksburg, subject to the order of Mutual; that he had collected the amount of the loss from Hartford and bought a new automobile.

On November 25th, Mutual talked with Fickel's secretary at Carlisle, Pennsylvania, and on the same day telephoned Hartford at its home office, demanding that the amount of its chattel mortgage be paid out of the proceeds of the policy. Thereupon, Hartford stopped payment on the draft.

The Seaboard Citizens National Bank of Norfolk instituted this action against Hartford, alleging that it had purchased for value the draft from M. E. and Jane K. Ferguson, without notice of any defects or adverse claims thereto, and was a holder of the negotiable instrument in due course. Hartford filed in the action an affidavit, under Code, sec. 8-226, disclaiming any interest in the subject-matter, and alleging that Mutual had asserted a claim against it on the insurance policy and praying that Mutual be made a party to the action. Mutual filed its answer and cross-claim asserting against Hartford a claim for $1,000. On these issues the jury returned a verdict for $2140.50 in favor of the bank, and $1,000 in favor of Mutual on its cross-claim. Hartford interposed no objection to the verdict against it in favor of the bank, but moved that the verdict for Mutual be set aside. This motion was overruled and judgments were entered on the verdicts. Hartford then moved to set aside the judgment entered against it for Mutual. This motion was overruled. From the latter judgment Hartford obtained this writ of error.

The contest in this court is between Mutual and Hartford. Each relies upon the terms, conditions and stipulations set forth in the contract of insurance. Hartford contends that when it paid the amount of the loss to the insured it had no notice that Mutual held the policy as collateral security for the payment of the debt the insureds owed it.

The evidence tending to prove Hartford received such notice is the testimony of A. W. McGlauhon, secretary and treasurer of

Mutual, who stated that on the same day (October 26, 1949) Mutual made the loan to Ferguson, he wrote a letter to J. Rodney Fickel (a copy of which was retained) as follows:

"October 26, 1949

"Mr. J. Rodney Fickel
"General Insurance
"264 W. Pomfret Street
"Carlisle, Pa.
"Dear Sir:
"Will you kindly place an endorsement on Policy Number HC-323043, Hartford Accident & Indemnity Company, in the name of M. E. Ferguson, Carlisle, Pa. covering a 1950 Buick 4 D Sed. M# 55973474, showing loss payable to the Mutual Savings & Loan Co., Inc., 106 E. Plume Street, Norfolk, Va. Our lien is in the amount of $1000.00, payable in twelve months at the rate of $84.00 per month.

Very truly yours,
A. W. McGlauhon, Sec'y-Treas.''

The original of the foregoing letter was placed in an envelope, addressed to J. Rodney Fickel, Carlisle, Pennsylvania, and deposited in the United States mail on October 26, 1949, in Norfolk, Virginia, in the ordinary course of business. The envelope carried the return address of Mutual, but was never returned.

The testimony of J. Rodney Fickel and his wife, who acted as his secretary, was taken in the form of depositions. This testimony was to the effect that no such letter was received at Fickel's office, and that nothing was known about the claim of Mutual until this controversy arose.

All authorities hold that mailing a letter, properly addressed and stamped, raises a presumption of its receipt by the addressee. Some authorities hold that the positive denial by the addressee of the receipt of such letter is sufficient to overcome the presumption. However, Virginia's decisions are in line with the majority rule to the effect that a denial of receipt of such a letter raises an issue of fact to be determined by the jury. It is said in *Yanago* v. *Aetna Life Ins. Co.*, 164 Va. 258, 178 S. E. 904, that "Strictly speaking, there is no necessary conflict between the testimony of a witness who says that he mailed a letter and that of an addressee who says that it was not received, for letters do miscarry, but their number, relatively speaking, is small indeed. And so the weight of authority is to the effect that their receipt

is a jury question, and this is the law in Virginia." *Adams* v. *Plaza Theatre, Inc.*, 186 Va. 403, 43 S. E. (2d) 47.

The verdict of the jury on this issue compels us to consider the case as though J. Rodney Fickel, as agent of Hartford, received the letter, and hence Hartford had notice of Mutual's lien.

Hartford's second contention is that the automobile was not insured at the time it was damaged by fire. This contention is based upon the following terms and conditions set forth in the insurance contract:

The policy named M. E. and Jane K. Ferguson as the insured, and declared that the automobile was unencumbered, and any loss by fire "is payable as interest may appear to the Named Insured and *None.*"

In the paragraph of the policy designated "Exclusions," among the risks not assumed is the following:

"This policy does not apply:

\* \* \* \* \* \*

"(h) under Coverages \* \* \* F (loss by fire) \* \* \* while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy."

It is conceded that at the time the automobile was destroyed it was subject to a chattel mortgage that was not specifically declared and described in the policy, and that Hartford had not endorsed on the policy its consent to the assignment of the insured's interest to Mutual.

The contract of insurance was between Hartford and the insured, not between Hartford and Mutual. The provision excluding coverage while the automobile was encumbered, unless such encumbrance was described in the policy, is not unreasonable or against public policy. It was inserted in the policy for the benefit of Hartford and could be waived by it. Hartford could have refused payment to the insured, on the ground that this condition has been breached. This it did not do. With knowledge of the breach of the condition, and notice of Mutual's lien, it acknowledged liability under the policy and paid the full amount of the loss to the insured. These findings of fact narrow the decisive question to whether Hartford will be permitted to interpose the breach of condition as a defense in this action by Mutual, as assignee, or pledgee, of the insured.

Hartford contends that it is not liable to Mutual because the policy provides that no assignment shall be binding upon it unless its consent is endorsed thereon, and no such consent was endorsed on the policy.

■ The general rule is that the transfer of a fire insurance policy as collateral security for the payment of a debt is not an assignment within the meaning of the provisions against assignment without the consent of the insurer endorsed thereon. Such a transfer does not affect legal title to or possession of the property involved. It simply gives the assignee or pledgee an equitable lien to the extent of his debt on the proceeds of the policy in the event of loss. *Ellis* v. *Kreutzinger*, 27 Mo. 311, 72 Am. Dec. 270; *Janesville State Bank* v. *Aetna Life Ins. Co.* 200 Minn. 312, 274 N. W. 232, 111 A. L. R. 705; *Central Union Bank* v. *New York Underwriters' Ins. Co.*, 52 F. (2d) 823, 78 A. L. R. 494; *Aetna Ins. Co.* v. *Smith, McKinnon & Son,* 117 Miss. 327, 78 So. 289, L. R. A. 1918D, 1158, 1161; Couch Cyclopedia of Insurance Law, Vol. 6, sections 1450d, 1450m, pp. 5143, 5152; Cooley's Briefs on Insurance, 2d ed., Vol. 2, pp. 1768-1769.

"A mere assignment of a policy as collateral security without insurer's consent does not violate a provision of the policy that it will be void if it is assigned without the insurer's consent, since the assignee in such a case acquires a mere equity under the policy, and the legal interest of the insured in the policy is not divested. Nor is the pledge of an insurance policy within a provision requiring an assignment of the policy to be in writing and filed with the insurer." 29 Am. Jur., Insurance, sec. 497, p. 405.

Mutual, in order to protect its lien on the automobile, took from the insured both the old certificate of title and the policy of insurance. It surrendered the Pennsylvania certificate of title to the Motor Vehicle Commissioner of Virginia and received in lieu thereof, a certificate of title issued by the Commonwealth of Virginia, with a notation of the lien thereon. It, on the same day, notified Hartford of its lien and requested that an endorsement be placed on the policy describing its lien. The former action protected Mutual against the sale or alienation of the automobile by the insured. Hartford is charged with the knowledge of the Virginia law which requires a lien to be noted on the face of the title to the car. This may be for the primary benefit of a party to whom the car might be sold, but here Hartford took the word of the insured that the policy had been destroyed in the burning

of the automobile, and without demanding a surrender of the policy, or examining the certificate of title which would have disclosed Mutual's lien, paid the loss.

Hartford, on receipt of the insured's demand for payment, could have declined to pay on the ground of the breach of the condition, and thus relieved itself of any liability under the policy, or it could have paid Mutual the amount of its lien, and the balance to the insured. It did neither. It elected to waive the breach of condition, or its right to declare a forfeiture, and paid the full amount of the loss to the insured. It was stated on the face of the draft that it was delivered "in full settlement, final satisfaction, and compromise of all claims and demands against the Hartford Fire Insurance Company for loss and damage occasioned by Collision which occurred on the 28th day of October, 1949, to the property described in Auto Policy No. HC-323043 of this Company, issued at Carlisle, Pa. agency, by J. Rodney Fickel."

Where a right to rely upon a forfeiture has been once waived it cannot be revived. *Monger* v. *Rockingham Home Mut. Fire Ins. Co.,* 96 Va. 442, 444, 31 S. E. 609. The general rule is "where an insurer, with knowledge of the breach of a condition pays the amount of loss ascertained by appraisers into court on an interpleader, or pays or partially pays any loss under the policy, it recognizes the policy as still in existence and must be considered to have waived its defense, unless the policy is severable so that under the law it would be only forfeitable in part and the payment is made on the nonforfeitable portion." 26 C.J., Insurance, sec. 425, p. 338; 45 C. J. S., Insurance, sec. 743, p. 754.

The facts in *Fidelity Lloyds of America* v. *Geddie,* 116 Tex. 656, 296 S. W. 500, were: Geddie purchased a policy insuring him against theft of the automobile provided it was locked while unattended. The policy contained a loss payable clause to McFarland Investment Company in the event of loss. The automobile was stolen while unlocked and unattended. The insurance company paid the investment company the amount of its loss, but refused to pay the balance to the insured on the ground that he had forfeited his right to recover. Speaking to the point, the court said:

"There being here a single, indivisible contract, the act of appellant in paying the McFarland Investment Company was entirely inconsistent with its right, and any intention, to avoid

the policy, and was consistent only with a recognition of its continuing validity, notwithstanding the known existence of a ground of forfeiture. This constitutes in law a waiver of the forfeiture to which the insurance company otherwise would have been entitled.

\* \* \* \* \* \*

"\* \* \* But the appellee's failure to keep his warrant with respect to locking his car while unattended constituted a complete defense to all liability by the insurance company, so that its payment to the investment company, the assured's nominee, was purely voluntary and constituted a waiver in any event." To the same effect, see *Howrey* v. *Star Ins. Co.*, 46 Wyo. 409, 28 P. (2d) 477; *Pfaffengut* v. *Export Ins. Co.*, 55 N. D. 112, 212 N. W. 518; *Griffith* v. *Frankfort General Ins. Co.*, 34 N. D. 540, 159 N. W. 19; *Midwest Metal Stamping Co.* v. *Citizens Fund Mut. Fire Ins. Co.*, 229 Iowa 969, 295 N. W. 444, 133 A. L. R. 779; *British General Ins. Co.* v. *Stamps* (Tex. Civ. App.), 57 S. W. (2d) 638; *Julian v. Commercial Assur. Co.*, 220 Mo. App. 115, 279 S. W. 740; 45 C. J. S., Insurance, sec. 743, p. 754.

The finding of the jury on the issue of notice presents the following situation: Hartford, with knowledge that the automobile was subject to an encumbrance that was not specifically described in the policy, and with notice of Mutual's lien, paid the full amount of the loss to the insured without requiring them to surrender the policy or the certificate of title. When the Seaboard Citizens National Bank instituted this action against Hartford on the draft, Hartford acknowledged its liability by stating that it was "ready to pay and dispose of the subject matter of this action as the court may direct," and interpleading Mutual as a party interested in the proceeds of the policy. Under these circumstances, Hartford will not be permitted to interpose in this action a defense previously waived.

Hartford further contends that "while an assignment of a debt may be good as an equitable assignment, it does not render the debtor liable in law to the assignee in the absence of the acceptance of the assignment by the debtor."

An assignee or pledgee of a non-negotiable paper, steps into the shoes of an assignor, or pledgor, and takes the assignment subject to all defenses of the obligor against the assignor, or pledgor, existing before notice of assignment.

It was held in *Switzer* v. *Noffsinger,* 82 Va. 518, that "no particular form is necessary to constitute an equitable assignment of debt or *chose in action.* Order for value appropriating a fund, is sufficient. No action can be maintained against drawee without his acceptance. Notice to debtor is essential to perfect title. Until such notice, the assignment is liable to all equities between debtor and assignor." Formerly, if a debtor refused to accept or acknowledge the validity of the assignment, the assignee's only recourse was to return the order to the assignor, or sue the debtor in equity for the amount of the claim. *Shenandoah Valley R. Co.* v. *Miller,* 80 Va. 821.

The present statute, sec. 8-94, authorizes the assignee or beneficial owner of any non-negotiable note, writing or other chose in action, to maintain thereon in his own name any action which the original obligee, payee or contracting party might have brought. In such action, the defendant may avail himself of all defenses he had against the assignor, or pledgor, before he received notice of the assignment. *County School Board* v. *First Nat. Bank,* 161 Va. 127, 170 S. E. 625; 2 Michie's Jur., Assignments, sec. 25, p. 158.

We find no reversible error in the ruling of the court on instructions.

The judgment of the trial court is affirmed.

*Affirmed.*