**LAWNDALE NATIONAL BANK, UNDER TRUST NO. 4846,**
Plaintiff-Appellant,

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,**
Defendant-Appellee.

No. 72–1036.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1973.

Decided Dec. 7, 1973.

George C. Rabens, Chicago, Ill., for plaintiff-appellant.

Edward A. McCarthy, Chicago, Ill., for defendant-appellee.

Before HASTINGS, Senior Circuit Judge, and KILEY and PELL, Circuit Judges.

KILEY, Circuit Judge.

Plaintiff, Lawndale National Bank under Trust No. 4846 (Lawndale), brought this diversity action against defendant, American Casualty Company of Reading, Pennsylvania (American Casualty), to recover upon a fire insurance policy for fire losses on property, title to which Lawndale held under a land trust, for Albert Berland as beneficiary. The jury returned a general verdict for American Casualty. Lawndale has appealed from

the judgment on the verdict. We reverse and remand.

On August 13, 1969 American Casualty, upon Berland's application—and acting at the direction of the Illinois Fair Plan Insurance Program (Fair Plan)—issued a policy providing coverage for loss by fire of a 12-flat apartment building located in Chicago, Illinois. In his application for insurance Berland answered "none" to the following question: "Give the applicant's 5 year loss record for fire and extended coverage perils." The answer was false. The policy issued, a fire occurred thereafter, and Lawndale filed a claim under the policy for loss of $35,177.46. American Casualty rejected Lawndale's claim and denied liability on the ground that coverage was void since the inception of the policy. Lawndale's suit followed.

American Casualty's answer asserted that the policy was void *ab initio* because of Berland's false statement, and that the claimed loss was caused by Berland's arson. Lawndale moved to strike the defenses. The motion was denied and the court instructed the jury with respect to both fraud in the application and arson asserted against Berland.

## I.

Lawndale contends that the district court erred in denying its motion to strike the defense of Berland's false representation. This contention is based on the proposition that American Casualty is precluded from relying on the affirmative defense of Berland's misrepresentation since the application for insurance was not attached to or made a part of its policy.

The Illinois Insurance Code provides that:

No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated

in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof . . . .
Ill.Rev.Stats. Ch. 73, § 766.

The reasons for the district court's ruling upon the issue are that § 766 is inapplicable since "[t]his litigation . . . does not deal with the customary form of insurance contract;" that the Fair Plan is designed to serve a unique insurance function; and that the application for and issuance of a policy under the Fair Plan program are different from those in the standard insurance contract.

The Illinois Fair Plan is the result of federal and state statutes, 12 U.S.C. § 1749bbb et seq., Ill.Rev.Stats. ch. 73, § 1065.69 et seq., designed to make basic property insurance available in high risk urban areas where ordinary insurance would be unavailable. The federal statute provides that in exchange for participating in statewide Fair Plan insurance programs the federal government will protect the insurers from loss caused by riot and civil commotion through a system of re-insurance. The Illinois statute authorizes the administrative framework through which applications for insurance are received and policies are issued.[1]

The district court correctly characterized the issue as one of first impression. Concededly Illinois law governs, and no Illinois case has decided the precise is-

sue. In rendering our decision we must anticipate how the Illinois Supreme Court would decide the issue, were the issue before that court.

It is undisputed that the application containing the alleged misrepresentations was not attached to or made a part of the policy. The policy itself does not contain the misrepresentation nor is it contained in any endorsement on it or rider appended to it. Read literally the language of § 766 bars American Casualty from using the alleged misrepresentation contained in the application as a defense. Moreover, neither the federal nor the Illinois Fair Plan statutory scheme contains any express provision limiting the application of § 766 to the present situation.[2]

We hold that the district court erred in denying Lawndale's motion to strike the defense of misrepresentation in the application because that defense is precluded by § 766.[3]

Since the late Justice Hugo Friend's opinion in Anderson v. John Hancock Mut. Life Ins. Co., 316 Ill.App. 338, 45 N.E.2d 39 (1942), through Freberg v. Coronet Ins. Co., 96 Ill.App.2d 39, 238 N.E.2d 174 (1968), the Illinois appellate courts have consistently adhered to the construction of § 766 given in *Anderson*: that unless the application is attached to the policy or the claimed misrepresentation is in the policy itself or in an endorsement or rider attached thereto, the misrepresentation is not available for suit to invalidate the policy

---

1. The statute authorizes the establishment of a Placement Facility (known as the Illinois Property Insurance Placement Facility) which is made up of all property insurers doing business in Illinois. Application to the Placement Facility would be made either by the property owner, by his insurance agent or by the insurance company which previously had supplied him with coverage. Once the application was received by the Placement Facility, the property to be insured would be inspected and a report forwarded to the Placement Facility for a determination of rates and insurability. At times pertinent to this case, the Placement Facility, following statutory directive, would assign the duty of issuance of a standard in-

surance policy to one of its member insurance companies on a rotating basis. Under recent statutory amendment, the Placement Facility now issues policies in its own name. Ill.Rev.Stats. ch. 73 § 1065.72–1.

2. Federal law merely provides for the re-insurance for insurance companies undertaking liability. 12 U.S.C. § 1749bbb et seq. The Illinois statute basically mandates establishment of a facility to administer the program and carry out the federally enacted program. Ill.Rev.Stats. ch. 73 § 1065.72–1.

3. In view of our finding we need not reach the question of whether the fire history question contained in the application was ambiguous.

or in defense of a suit upon the policy. This is the general rule followed in states having similar statutes. 1 Couch on Insurance §§ 4:20–21.

In *Anderson* plaintiff brought suit under three industrial life insurance policies issued by defendant. Each of the three policies provided that the policy would be void by breach of any of the enumerated conditions. The court held that plaintiff in that case, who was ill prior to issuance of the policy but who stated in the application which was not attached to the policy that her health was good, could not recover because of the breach of one of the enumerated provisions contained in the policy. The dictum in the court's discussion of § 766 is that in "policies of this character"—referring to industrial life insurance policies—the application need not be attached where the policies contain the conditions breached. The court considered plaintiff's arguments that those insured in such policies would have had greater protection in having the application attached than in the policy's small print alone and thus be better able to correct false or inaccurate statements to guard against possible fraud by agents. The court concluded these arguments should be addressed to the legislature.

In Auriemma v. Western & Southern Life Ins. Co., 323 Ill.App. 271, 55 N.E.2d 292 (1944), the court relied on the *Anderson* decision in holding that in industrial life insurance policies, conditions in the policy as to "sound health" apply to the health of the insured at the delivery of the policy. The issue now before us was there "abandoned" on appeal, although the question was raised by defendant's answer. The court's review was limited to the trial court's decision striking the other defenses implied in the court's holding.

In Loving v. Allstate Ins. Co., 17 Ill. App.2d 230, 149 N.E.2d 641 (First District, 1958), the court—of which court panel the author of this opinion was a member—first stated that in an automobile insurance policy, in order for All-

state to use the misrepresentation as a basis to deny "rights on the . . . policy," the application must, under § 766, be attached to the policy, and since the policy was not attached the defense of misrepresentation was not available. The court stated that § 766, inter alia, requires the insurer to place in the hands of the insured the "entire contract" upon which it intends to rely, whether policy alone or with application, endorsement or rider. *Id.*, at p. 236, 149 N.E.2d 641. The purpose of such a statute is "solely" for the protection of the insured. See 1 Couch on Insurance § 4:20. The court went on, however, to point out that the alleged Loving misrepresentations relied upon were in the policies themselves and therefore the defense was available. The summary judgment for Loving was reversed and the cause remanded for trial of the issue whether Loving had notice before application of refusal of a different insurer to renew his policy with that insurer.

The Illinois Appellate Court in Government Employees Ins. Co. v. Dennis, 65 Ill.App.2d 365, 212 N.E.2d 759 (Second District, 1965), an automobile insurance case, concluded that § 766 had no application to preclude insurer from declaratory judgment that the policy was *void ab initio* for misrepresentation of ownership because the alleged misrepresentation occurred not "in negotiation of the policy" but after the policy issued. The court noted that the application was not attached to the policy but the policy itself stated that the person who made the representation was the owner. The cause was remanded because of the trial court's error in dismissing the insurer's suit at close of its case and in rejecting insurer's offer of express testimony on the assumption there was no evidence of misrepresentation.

Finally, in Freberg v. Coronet Ins. Co., *supra,* another automobile insurance case, the court affirmed the trial court's decision that § 766 precluded defendant from proving misrepresentation in the application. The reason advanced was that the applications were not attached

to Coronet's policies. The court, on authority of *Anderson* and *Loving*, held that the "plain language" of the statute sustained the ruling.

The district court's ruling, in the case before us, relied upon *Anderson* and *Auriemma.* This reliance, as we have just shown, is unjustified. There is no basis for the district court's conclusion that since the Illinois appellate courts there permitted the misrepresentation defense in a "special type," *i. e.,* industrial life insurance policies, permission ought be given here because Fair Plan is a special type. What justified the holdings in those cases was not that industrial life insurance was a special type of insurance. What made the insurance there a special type was that the policy issued without medical examination but contained conditions precedent to taking effect of the policy to which application is not attached or made part of the policy. The insurance does not take effect unless the insured is in good health when the policy is delivered, and the conditions under which the policy issues are in the policy itself.

In none of the Illinois appellate court cases discussed above was leave to appeal to the supreme court sought. No Illinois Supreme Court case decided the issue. *But see* Campbell v. Prudential Insurance Co., 15 Ill.2d 308, 155 N.E.2d 9 (1958). Justice Schaefer in discussing construction of part of § 766 stated at p. 312, 155 N.E.2d at p. 11, "The section requires both warranties and representations to be stated in the policy or attached to it, if they are to have any effect upon the insurer's liability."[4]

## II.

■ Lawndale contends that the arson defense was waived when American Casualty rejected the insurance coverage, giving as its only reason that the policy was void from its inception due to fraudulent misrepresentations in the application for the insurance.

The district court in a pre-trial memorandum denied Lawndale's motion to strike the arson defense on the ground of waiver because it was "not clear" at that time American Casualty could be charged with knowledge sufficient to assert the arson defense in rejecting Lawndale's claim under the policy. The ruling was without prejudice to repeating the motion at a subsequent pretrial hearing and Lawndale does not argue that the appendix shows a renewal of the motion. No reference was made in the court's instructions to a waiver, and no showing is made by Lawndale here that the court's finding of insufficient knowledge is clearly erroneous. Under these circumstances we find no merit in the contention that the defense of arson was waived.

■ It is true that certain insurance defenses may be waived by an insurer if not timely raised, but not true of the defense of arson. Public justice, in our opinion, overcomes Lawndale's technical argument in this case. Arson is pregnant with danger to persons not privy to the insurance contract, a criminal act which in Illinois is classified as a "forcible felony." Arson is an act which transcends the insurance policy and has the potential of harm to innocent persons.

■ Lawndale contends that it is impossible to determine from the general verdict upon which defense—arson or misrepresentation—the jury relied in making its general verdict.

The two defenses are independent of each other, and it is impossible to say whether the verdict was based on the misrepresentation defense that should have been stricken or the arson defense that was properly submitted to the jury. We note that the district court, after the verdict was returned, stated that "we

---

4. Furthermore, we point out that § 766 expressly removes maritime insurance, etc. from its scope. We presume the legislature knew of these exclusions. It had an opportunity to exclude Fair Plan from the scope also, but has not done so.

don't even know whether they [jury] decided that the first affirmative defense was the clincher, or the second or both." We hold, on authority of Maryland v. Baldwin, 112 U.S. 490, 5 S.Ct. 278, 28 L.Ed. 822 (1884), most recently followed in Sunkist v. Winckler, 370 U.S. 19, 30, 82 S.Ct. 1130, 8 L.Ed.2d 305 (1962), that the judgment and verdict must be set aside and the arson defense issue retried. The *Baldwin* court stated:

> On the trial evidence was introduced bearing upon all the issues, and if any one of the pleas was, in the opinion of the jury, sustained, their verdict was properly rendered, but its generality prevents us from perceiving upon which plea they found. If, therefore, upon any one issue error was committed, either in the admission of evidence, or in the charge of the court, the verdict cannot be upheld, for it may be that by that evidence the jury were controlled under the instructions given. *Id.*, 112 U.S. at p. 493, 5 S.Ct. at p. 280.

Cases cited to us by American Casualty are inapposite. In those cases the courts sustained verdicts for plaintiffs in holding that any good count in a multi-count complaint is sufficient to sustain a verdict.

We cannot, without invading the province of the jury, decide that the evidence of arson justifies the verdict for American Casualty. Nor can we say, as a matter of law, that American Casualty was entitled to a verdict on that defense. We think the district court would have directed a verdict for American Casualty had the evidence been so overwhelming in its favor that a verdict against it could not have been upheld. Pedrick v. Peoria & Eastern R. Co., 37 Ill.2d 494, 229 N.E.2d 504 (1967).

For the foregoing reasons, the judgment of the district court is reversed and the cause remanded with directions for a new trial upon the issues raised by the arson defense.