A & E SUPPLY COMPANY, INC., Plaintiff,

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Defendant.

Civ. A. No. 81–0140–B.

United States District Court, W.D. Virginia, Big Stone Gap Division.

June 15, 1984.

---

Eugene K. Street, Thomas R. Scott, Jr., Grundy, Va., for plaintiff.

Howard C. McElroy, Abingdon, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, A & E Supply Company, Incorporated (hereinafter "A & E"), brought this action against the defendant, Nationwide Mutual Fire Insurance Company (hereinafter "Nationwide"), in the Circuit Court of Buchanan County, Virginia, alleging that Nationwide breached its insurance agreement by denying the plaintiff's fire loss and that the defendant's actions in handling the claim were malicious and wanton and violated good faith and fair dealing. The defendant petitioned the court for removal of the case pursuant to 28 U.S.C. § 1441(a). A & E is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Buchanan County; Nationwide is incorporated under the laws of the State of Ohio with its principal place of business in Columbus, Ohio. The amount in controversy, excluding interest and costs, exceeds ten thousand dollars ($10,000). Thus, the court has jurisdiction over this suit based upon 28 U.S.C. §§ 1332 and 1441(a).

At a hearing on May 9, 1984, the court denied the plaintiff's motion for partial summary judgment and gave the plaintiff ten (10) days in which to amend its complaint to state, in separate counts, any independent torts originally alleged in the first complaint. *Kamlar Corp. v. Haley*, 224 Va. 699, 707, 299 S.E.2d 514, 518 (1983). This case now is before the court on the plaintiff's motion to alter or amend the denial of summary judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

## I. FACTS

The relevant facts are undisputed. Nationwide issued a fire insurance policy numbered 53SM 367–494–A005 to the plaintiff on June 6, 1979. Under the policy, the building had $150,000 worth of property coverage, and the personal property had $250,000 worth of coverage. Liability coverage for bodily injury and property damage was $300,000 per occurrence. The listed mortgagee of the realty was Cumberland Bank & Trust Company in Grundy, Virginia. Effective March 7, 1980, the policy was amended so that Borg-Warner Acceptance Corporation, lienholder on the inventory, became a named loss payee. The loss payable clause stated: "Loss, if any, shall be adjusted with the Insured [A & E] and Borg-Warner Accept[ance] Corp[oration], 400 Allen Drive, P.O. Box 6731, Charleston, W. Va. 25302, as their interests may appear." This policy was in effect from April 25, 1979 to May 3, 1981.

On October 27, 1980, a fire totally destroyed the insured's building and its contents. After conducting a detailed investigation, the representatives of Nationwide concluded that the cause of the fire was

arson by the two principals of the corporate plaintiff, Larry Fletcher and Terry Fletcher. Under the insurance contract Nationwide could pay the mortgagee and would be subrogated to all the rights of the bank. Consequently, the insurer paid the mortgagee. Another provision of the policy which listed the exclusions from coverage explicitly precluded insurance coverage for any criminal, fraudulent, or dishonest act that the insured or its officers instigated. On March 12, 1981, Nationwide denied liability for the plaintiff's claim because the insurer concluded the officers of A & E set the fire, and A & E began the present action about a month later. Nationwide, in its answer, raised the defenses of arson and misrepresentation as to the cause of the fire and amount and value of the personalty involved in the fire. Then in May, 1981, Nationwide paid the sum of $66,000 to Borg-Warner, the co-loss payee, to settle its claim; Borg-Warner was to assign its security and instruments of indebtedness to Nationwide.

Based upon this payment, the plaintiff filed a motion for partial summary judgment on the defendant's defenses of arson and misrepresentation, alleging that it had waived or was estopped to assert these defenses when it paid the co-loss payee. After both parties submitted memoranda to support their positions and argued the motion, the court denied the motion on the arson defense. Having reconsidered its judgment, the court vacates the previous Order denying the motion and enters partial summary judgment in favor of the plaintiff.

## II. DISCUSSION

The issue presented is whether the defenses of arson and misrepresentation may be impliedly waived by paying a co-loss payee under Virginia law. The general rule is: "An insurer which, with knowledge of a breach of condition, pays the full amount of loss to the insured thereby waives the breach of condition or the right to declare a forfeiture." 44 Am.Jur.2d *Insurance* § 1672 at 663 (1982). The Virgin-

ia Supreme Court adopted this rule in the case of *Hartford Fire Ins. Co. v. Mutual Savings & Loan Co.,* 193 Va. 269, 68 S.E.2d 541 (1952). The case involved an automobile insurance policy excluding coverage when the car was encumbered unless the security interest was noted in the policy. The insurance company paid a third party for the loss of the car and later contended it had no knowledge of the bank's lien. The Virginia Supreme Court held that the insurer was charged with knowledge of the lien and receipt of notice of the lien and that the insurance company waived the breach of the condition or its right to declare a forfeiture by paying the full amount to the insured.

Where a right to rely upon a forfeiture has been once waived, it cannot be revived. *Monger v. Rockingham Home Mutual Fire Ins. Co.,* 96 Va. 442, 444, 31 S.E. 609. The general rule is "where an insurer, with knowledge of the breach of a condition, pays the amount of loss ascertained by appraisers into court on an interpleader, or pays or partially pays any loss under the policy, it recognizes the policy as still in existence and must be considered to have waived its defense, unless the policy is severable so that under the law it would be only forfeitable in part and the payment is made on the nonforfeitable portion." 26 C.J. *Insurance* § 425 at 338; 45 C.J.S. *Insurance* § 743 at 754.

*Id.* at 276, 68 S.E.2d at 545. In reaching this conclusion the state court relied upon a Texas case, *Fidelity Lloyds of America v. Geddie,* 116 Tex. 656, 296 S.W. 500 (1927). The facts revealed that Geddie purchased an insurance policy protecting him against the theft of his car provided it was locked. The car was stolen while unlocked and unattended. Under a loss payable clause the insurer paid the investment company but refused to pay the balance to the insured because he forfeited the right to recover when he left the car unsecured. The Texas Supreme Court concluded that under the singlke, indivisible contract the insurance company waived the forfeiture by paying the investment company. *Id.* at

658, 296 S.W. at 502, *quoted in Hartford Fire Ins. Co. v. Mutual Savings and Loan Co.,* 193 Va. at 276–77, 68 S.E.2d at 545–46.

Only one generally accepted exception exists to this rule: "The principles of estoppel and implied waiver do not operate to extend coverage of an insurance policy after the liability has been incurred or the loss sustained." *Insurance Co. of North America v. Atlantic Nat'l. Ins. Co.,* 329 F.2d 769, 775 (4th Cir.1964) (citation omitted). In that case Atlantic filed a SR21 form with the Virginia Commissioner of Motor Vehicles stating that its policy was in effect at the time of the accident. Atlantic subsequently denied liability based upon two specific exclusions: Operation of the vehicle outside of New York without written permission and liability only for bodily injury to the passenger. North American contended that Atlantic waived or was estopped to rely on these exclusions because it filed a SR21 form representing that the policy was effective on the day of the accident. The Fourth Circuit Court of Appeals concluded that the Virginia Supreme Court would hold that Atlantic would not be estopped from relying on its policy exclusions despite the filing of the SR21 and the representations in it. *Id.* at 774. It is well-settled that "the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture." *Id.* at 775 (citation omitted). The plaintiff is not seeking to extend the coverage of its insurance policy; thus, this one exception is inapplicable to the case at bar.

■ The defendant argues that the element of intention to waive is missing.

"Waiver" is the voluntary, intentional relinquishment of a known right. Such waiver may result either from affirmative acts of the insurer or its authorized representatives, or its nonaction with knowledge of the facts. Consideration is not generally considered essential, although, if it were, it could generally be obtained from reliance by the insured upon such waiver, failure to obtain other insurance, and the like. The circumstances must indicate that the relinquishment is intended by the insurer, and the insurer must have full knowledge of all facts pertaining thereto.

16B J. Appleman, *Insurance Law & Practice* § 9081 at 489–91 (1981). *See* 44 Am. Jur.2d *Insurance* § 1572 at 581–82 (1982). While waiver is an intentional relinquishment of a known right or privilege, "it is not necessary, in order to waive a claim, that a party be certain of the correctness of the claim and of its legal efficacy; it is enough if he knows of the existence of the claim and of its reasonably possibly efficacy." 28 Am.Jur.2d *Estoppel and Waiver* § 158 at 841 (1966). Another general rule also follows that:

In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company. So too, if either party must suffer from an insurance agent's mistake, it must, as a rule, be the insurance company, his principal.

44 Am.Jur.2d *Insurance* § 1612 at 616 (citation omitted). Contrary to the defendant's argument, the record reveals that Nationwide intended to pay Borg-Warner and that at the time it made the payment, it knew of the defenses of misrepresentation and arson against A & E. Robert E. Allen, Jr., a representative of Nationwide, described the mistake as follows:

As stated in my earlier Affidavits, Nationwide's payment to Borg-Warner was a mistake. During my training as an insurance adjuster with Nationwide, I had been taught that all lienholders named on automobile insurance policies were entitled to be paid for losses regardless of any acts or neglects of the named insureds. I did not know that named mortgagees and loss payees are accorded different protections under fire

insurance policies. Because of that lack of knowledge, I recommended to my supervisor that Borg-Warner (a loss payee) and Cumberland Bank & Trust Company (a named mortgagee) both be paid their losses resulting from the Fire without regard to the policy defenses Nationwide had asserted against the plaintiff. My supervisor, Reese J. Whitley, apparently had the same understanding because he concurred with my payment recommendations. I then proceeded to pay Borg-Warner.

(Affidavit of Robert E. Allen, Jr. filed May 10, 1984 at 2). Thus, no mistake of fact existed on the part of Nationwide. The mistake arose from the agent's failure to understand the legal significance of the payment. Certainly, the insurer and its agents are charged with knowledge of the instrument the insurance company drafts and the effect of its terms; Nationwide should know the legal consequences of its acts. Accordingly, the court holds that the insurance company did not mistakenly pay Borg-Warner.

In its earlier bench opinion, the court was persuaded by some dicta from a case arising out of the Seventh Circuit Court of Appeals that holds the defense of arson is not impliedly waived. *Lawndale Nat'l. Bank v. American Casualty Co.*, 489 F.2d 1384, 1388 (7th Cir.1973). Upon further research and consideration, the court concludes its previous decision was incorrect. In this diversity case a bank sued the insurance company to recover for fire losses to an apartment complex that the bank held in trust. The insurer raised the defenses of false statements and arson, and the trial court instructed the jury on both defenses. Since the court incorrectly instructed the jurors on the misrepresentation defense and the panel returned a general verdict for the defendant, the Seventh Circuit reversed the judgment and remanded the case for a new trial. *Id.* at 1389. The appellate court stated, in dicta:

It is true that certain insurance defenses may be waived by an insurer *if not timely raised,* but not true of the defense of arson. Public justice, in our opinion,

overcomes Lawndale's technical argument in this case. Arson is pregnant with danger to persons not privy to the insurance contract, a criminal act which in Illinois is classified as a "forcible felony." Arson is an act which transcends the insurance policy and has the potential of harm to innocent persons.

*Id.* at 1388 (emphasis added). The plaintiff contends that *Hartford Fire Ins. Co. v. Mutual Savings & Loan Co.* is instructive on this issue. In the case discussed above, the insureds filed a proof of loss stating that they were the sole owners of the car and that there were no liens against the vehicles. In reliance upon this false statement the insurance company paid them. 193 Va. at 271, 68 S.E.2d at 542–43. As the plaintiff argues, this act constitutes the crime of obtaining money under false pretenses in Virginia and is punishable by imprisonment for one (1) to twenty (20) years or fine of not more than $1,000 or jailed for no more than twelve (12) months. Va.Code § 18.2–178 (Repl.Vol.1982). Even though the Virginia Supreme Court has not addressed the issue at bar, the state court has held implicitly that a criminal defense may be waived by paying a loss payee under the policy.

Following this concrete Virginia case law, this court concludes that Nationwide clearly waived its defense of misrepresentation of material facts when it paid Borg-Warner Acceptance Corporation. Moreover, the insurance company waived the defense of arson. The precedent is clear that if an insured pays a loss under the policy, it has waived a right of forfeiture about which it had knowledge. Arson is no exception. The Seventh Circuit case is based upon the law of Illinois and is not persuasive upon a court which must follow the precedent of the Virginia Supreme Court. The court is of the opinion that the state court would hold that both defenses were waived upon payment of Borg-Warner. Accordingly, the previous Order dated May 8, 1984, is vacated in part and the plaintiff's motion for partial summary judgment is granted.

The defendant has filed a motion to alter or amend this judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure accompanied with an affidavit of Howard C. McElroy and a certificate of insurance. This certificate states, in part, that "[t]his insurance only as to the interest therein of B[org]-W[arner] A[cceptance] C[orporation] or its assignees, shall not be impaired or invalidated by any act or neglect of the insured, ...." Thus, the defendant argues that it paid Borg-Warner based upon its liability under this policy, not out of a mistake as to the legal significance. This action strengthens the court's factual findings that the insurer intentionally paid the co-loss payee and does not change the resulting forfeiture of the defenses against A & E. Accordingly, the defendant's motion to alter or amend is denied.