STATE of Missouri, ex rel. SHELTER
MUTUAL INSURANCE
COMPANY, Relator,

v.

Honorable James Clifford CROUCH,
Judge of the 38th Judicial Circuit
of Missouri, Respondent.

No. 14530.

Missouri Court of Appeals,
Southern District,
Division Two.

July 3, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 24, 1986.

Application to Transfer Denied
Sept. 16, 1986.

E.C. Curtis, Lee Chestnut, Farrington,
Curtis, Knauer, Hart and Garrison, Spring-
field, for relator.

Jerry L. Reynolds, Larry B. Moore, Jerry
L. Reynolds and Associates, P.C., Spring-
field, for respondent.

PREWITT, Chief Judge.

The question presented is whether a con-
tention that an insured intentionally burned
property to receive insurance proceeds can
be a defense by the insurance company
when this contention was not stated in the
insurance company's letter denying the
claim.

David J. Meeker and Barbara A. Meeker
owned a dwelling near Branson. Relator
Shelter Mutual Insurance Company issued
a contract of insurance, insuring the dwell-
ing against various losses including losses
due to fire. On July 18, 1983, the dwelling
and contents were damaged by fire. By
letter dated September 9, 1983, Shelter ad-
vised the Meekers that because of misstate-
ments, regarding previous losses, in the
application for insurance the insurance poli-
cy was "void and was never effective" and
Shelter "cannot, therefore, recognize any
claim presented by you for the above men-
tioned loss." Shelter attempted to return
the amount of the premium paid by the
Meekers, with interest.

Thereafter, the Meekers filed suit on the
policy, seeking damages for loss to the
dwelling. Shelter's answer stated in part:

"18. For a further and complete de-
fense, this defendant alleges that plain-
tiffs intentionally burned, or caused to be
burned, the insured property for the pur-
pose of collecting the insurance provided
in the insurance policy issued by this
defendant to plaintiffs."

The Meekers moved to strike this and
other portions of the answer because "De-
fendant Shelter Mutual Insurance Compa-
ny has waived any defense not set out in
its denial letter dated September 9, 1983"
and is thus "estopped to raise any defense
not set out in its denial letter". The re-
spondent trial judge indicated his intention
to sustain plaintiffs' motion and strike
paragraph 18 of the answer, unless prohib-
ited. Shelter then filed its petition seeking
a writ of prohibition prohibiting respondent
from striking paragraph 18. This court
issued a preliminary order.

It is often stated that if an insurer denies
liability upon a specific ground or defense,
all other grounds or defenses are waived,
and the insurer is estopped to assert them,
at least if the original denial was made
with full knowledge of the facts. See Cal-

vert v. Safeco Insurance Co. of America, 660 S.W.2d 265, 271 (Mo.App.1983); Morris v. Reed, 510 S.W.2d 234, 240 (Mo.App. 1974); Stone v. Waters, 483 S.W.2d 639, 646 (Mo.App.1972); 16C Appleman, Insurance Law and Practice, § 9260, at 393–394 (1981).

Although for the estoppel to apply there must be some prejudicial reliance on the company's action, under Missouri law that reliance always appears to be present because "no Missouri case has required any more than a very slight degree of prejudice to the claimant in this situation, it being held that the mere trouble and expense of bringing suit is enough." Morris v. Reed, supra, 510 S.W.2d at 240.

The waiver and estoppel rule has been applied to deny the insurance company an additional defense where the original denial attempted to declare the policy void or nonexistent. See 16C Appleman, supra, at 395–396. See also Morris v. Reed, supra, 510 S.W.2d at 240–241; Ash-Grove Lime & Portland Cement Co. v. Southern Surety Co., 225 Mo.App. 712, 39 S.W.2d 434, 441 (1931).

The cases we have found and that were cited to us do not agree on whether arson by an insured is subject to this rule. In Lawndale National Bank v. American Casualty Co., 489 F.2d 1384 (7th Cir.1973), the insurer denied coverage claiming fraudulent misrepresentations in the application for insurance. Later, the trial court allowed the company to assert the defense of arson. On appeal the court stated that the defense of arson cannot be waived. 489 F.2d at 1388. No authority is cited to support that conclusion.

A & E Supply Co. v. Nationwide Mutual Fire Insurance Co., 589 F.Supp. 428, 432 (W.D.Va.1984), following what was thought to be Virginia law, refused to follow Lawndale and found that the defense of arson was subject to waiver. See also Mid-Century Insurance Co. v. Cherubini, 95 Nev. 293, 593 P.2d 1068, 1070 (1979) (direction to lower court to determine whether defense of arson is subject to waiver).

Morris v. Reed, supra, discusses the defense of arson by an insured as if waiver or estoppel might prevent it from being raised, but determines that there was no evidence to support that defense. 510 S.W.2d at 240–241. In DeLisle v. Cape Mutual Insurance Co., 675 S.W.2d 97, 101–102 (Mo.App.1984), this district was not required to make a determination of the question now presented because the trial court had found there was no arson.

Relator Shelter Mutual Insurance Company contends that because arson is against the public policy of Missouri, it is a defense that cannot be waived. In its brief, Shelter likens the defense of arson to the lack of an insurable interest in an insurance contract which "is a requirement of public policy against a gambling contract and cannot be waived." Estes v. Great American Ins. Co., 112 S.W.2d 153, 156 (Mo.App.1938). See also Galati v. New Amsterdam Casualty Co., 381 S.W.2d 5, 9 (Mo.App.1964). The Meekers agree that arson is against public policy, but contend that this does not prevent the arson defense from being subject to the rule of waiver and estoppel.

We see no good reason why the public policy against arson would prevent the rule of waiver and estoppel from applying to the arson defense. If the company legitimately believes that they have an arson defense, then it should be raised when they first deny the claim. The grounds for denial should be set out then so a policyholder knows what the defense or defenses will be and can adequately prepare to meet those defenses. If certain defenses can be raised later, an insurance company can make it impossible for an insured to know what the real defense is and thus mislead an insured into not investigating that defense. When the insured learns of the defense it may be too late for a proper investigation.

The cases cited by Shelter, which state that the defense of lack of an insurable interest cannot be waived, can be distinguished from waiver of the defense of arson in that an investigation soon after the loss would not usually be necessary for an

insured to rebut the defense of lack of an insurable interest.

If an insurer has a legitimate reason why it did not know of a defense of arson by an insured, and could not have known and raised it earlier, then the insurer should be able to alter or add to its initial denial. See *Stone v. Waters,* supra, 483 S.W.2d at 646. However, there is no such contention by Shelter here. Where no acceptable excuse is established for not raising the defense of arson committed by an insured, then an insurance company can be estopped to do so later.

Shelter also claims that denying it the defense of arson might create coverage by waiver or estoppel. Courts frequently state that although waiver and estoppel may prevent an insurer from asserting a defense to coverage otherwise provided by a policy, waiver or estoppel cannot establish coverage where none existed before. *State Farm Mutual Automobile Insurance Co. v. Hartford Accident & Indemnity Co.,* 646 S.W.2d 379, 381 (Mo.App.1983). See also *Associated Indemnity Corp. v. Miller-Campbell Co.,* 596 S.W.2d 383, 389 (Mo. banc 1980).*

However, here, prohibiting the defense of arson will not create coverage by waiver or estoppel. If the policy is not void for misrepresentation, loss by fire to the dwelling was a covered risk. Arson by the Meekers was only a defense to avoid payment of the loss from the covered risk. The question is whether the defense of arson can be raised and whether it can or not does not create additional coverage.

Respondent was correct in intending to strike paragraph 18 of Shelter's answer. The preliminary order is quashed.

HOGAN, P.J., and CROW, J., concur.

MAUS, J., dissents and files dissenting opinion.

MAUS, Judge, dissenting.

I respectfully dissent. This case does not present a question of waiver of or estoppel to assert as a defense a concealment, misrepresentation or breach of warranty or condition. See Annot., Insurance Coverage—Estoppel—Waiver, 1 A.L.R.3d 1139 (1976). It presents a question of coverage.

I find no case specifically dealing with coverage of a loss caused by arson of an insured. Nevertheless, I believe it is against public policy to insure a person against loss by his own intentional criminal act. 43 Am.Jur.2d Insurance § 462 (1982). The application of such a limitation is demonstrated in the cases dealing with the requirement of an insurable interest. *De-Witt v. American Family Mut. Ins. Co.,* 667 S.W.2d 700 (Mo. banc 1984). It has been recognized in the following statement. "Shelter does not argue that, totally aside from the language in its policy, as a matter of public policy coverage will not be extended to Parrish with respect to liability arising out of his own criminal conduct." *Shelter Mut. Ins. Co. v. Parrish,* 659 S.W.2d 315, 321 (Mo.App.1983). Authorities to that effect are cited in *Shelter.* Had the policy in question expressly covered loss arising from arson by the insured, that coverage would have been contrary to public policy. To eliminate arson by an insured as a defense is in effect to provide such coverage. I do not believe coverage for loss arising from arson by an insured should be created by waiver or estoppel. See *Lawndale Nat. Bank, Tr. 4846 v. American Cas. Co., Reading, Pa.,* 489 F.2d 1384 (7th Cir.1973).

\* As noted in a footnote at 16B Appleman, Insurance Law and Practice, § 9090 at 576 (1981), "despite the lip service given to the doctrines announced in the following material, a caveat should be observed to the effect that, as shown in the other sections of this Volume and the succeeding volumes dealing with waiver and estoppel, the courts, in fact, frequently do extend the coverage of a policy by the application of one or the other of such doctrines. And, if they do not create a contract initially, they may prevent the company from denying its existence, which is tantamount to the same thing."